People of the State of Illinois, Plaintiff-Appellee, v. Ruth Young, Defendant-Appellant.

Gen. No. 51,797.

First District, Third Division.

September 26, 1968.

Rehearing denied October 24, 1968.

Steven L. Larson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Gerald Eisen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

On June 15, 1966, at approximately 1:30 p. m., three police officers attempted to execute a search warrant for the person of "Aubrey Young" and the premises of "4401 W. West End St., 3rd Floor, Chicago, Illinois." They went to a six-apartment building which contained a common entrance to 4401 and 4403 W. West End Street. The officers saw the name "Young" on a mailbox and proceeded to the third floor and sought admittance, thinking that they were at the right apartment. In fact, they were at the third-floor apartment of Willard Young, 4403 W. West End St., Chicago.

The officers were admitted by Willard Young's four-year-old daughter. The defendant, Ruth Young, the wife of Willard Young, age 31 and eight months pregnant, was in the kitchen. The defendant had sent her child to open the door because she thought it was another daughter who was knocking.

One of the officers testified that upon entering the apartment he told the defendant that he had a search warrant for Aubrey Young. He stated that he showed her a copy of the warrant and read it to her, but that she started screaming, struck him in the chest with her closed fist and said, "You and nobody else will search my apartment." He said that she then turned around and picked up a ketchup bottle and attempted to strike the officers but they subdued her and placed handcuffs on her. Other officers were called, including a policewoman, and the defendant and her apartment were searched. Two bottles containing capsules were taken. The sub-

21

stance in the capsules is not identified in the record nor does the record reveal whether the capsules were a prescriptive drug or proprietary medicine.

Mrs. Young testified that the officers came into the kitchen and she asked them how they got in and what they were doing there. One of them replied that her daughter let them in and that they had a search warrant. He asked if it was the Young residence. She said it was and he showed her the warrant. She told him, "Wilbur Young lives here. You have the wrong name." He said all that mattered was that the name was Young. She protested that Aubrey Young did not live there and never had and that they could not search her home. She chided him for tricking her little daughter and said he should be ashamed of himself. The officers seized her and handcuffed her hands behind her back. She told them that she did not mind them arresting her and putting handcuffs on her, but she did not want them to search her home. When the policewoman came and started to search her, she protested again saying, "You are not going to search me; you don't have a right to search me." One of the officers then struck her in the face and forced her to submit. She admitted that she had screamed, pushed an officer in the back and picked up a bottle.

Mrs. Young was charged with resisting a police officer and with battery. She was tried and convicted in a nonjury trial and placed on six months' probation. She contends that in her effort to prevent an unlawful search she did not commit either offense, but that if pushing the officer was a battery, it was legally justified.

Section 31–1 of the Criminal Code defines the offense of resisting a peace officer as follows:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined not to exceed $500 or

imprisoned in a penal institution other than the penitentiary not to exceed one year, or both." Ill Rev Stats 1965, c 38, § 31–1.

There is no question that the defendant resisted the police officers. The issue is whether she resisted an "authorized" act.

The Committee Comments to section 31–1 (SHA, c 38, § 31–1) note that the provision "covers only resistance or obstruction to 'authorized' acts of the officer." What constitutes an authorized act is not indicated either in the Code or the Comments, nor have the words been defined by our Illinois courts. However, some decisions, under prior statutes and ordinances prohibiting resistance to an officer, have permitted forceful resistance to the illegal acts of an officer. Wentworth v. People, 4 Scam (5 Ill) 550 (1843); Ryan v. City of Chicago, 124 Ill App 188 (1906). See also Bowers v. People, 17 Ill 373 (1856) and McQuoid v. People, 3 Gilm (8 Ill) 76 (1846). Other cases have disapproved of forceful resistance to illegal acts. People v. Rauschenberg, 29 Ill App2d 293, 173 NE2d 6 (1961), affd 23 Ill2d 511, 179 NE2d 13 (1962); Smith v. People, 99 Ill 445 (1881).

■  In construing the language of a statute, we must presume the legislature intended to give the words their ordinary and usual meaning in the absence of a statutory definition or other indication of a contrary intent. People v. LaPorte, 28 Ill App2d 139, 171 NE2d 95 (1963). The common definition of the word "authorized" is "endowed with authority." "Authorize" means "to endow with authority or effective legal power, warrant, or right." Webster's New International Dictionary (3rd ed 1967).

■  The State would place the execution of an illegal search warrant in the same category as the making of an illegal arrest. In the latter instance forceful resistance is prohibited by law:

"A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." Ill Rev Stats, 1965, c 38, § 7–7.

According to the Committee Comments to this section, "The public interest in discouraging violence and insisting upon the use of peaceable methods of obtaining release from unlawful arrest clearly outweighs the recognition of the feeling of the individual." SHA, c 38, § 7–7. The State urges that the same rationale—that of preserving the peace—should apply to the service of a search warrant.

By its terms, section 7–7 applies only to an arrest. Section 31–1 of the Criminal Code, therefore, still determines the legality of the defendant's resistance in this case. A Federal case, Landry v. Daley, 280 F Supp 938 (1968), upheld the constitutionality of section 31–1. In the course of its opinion, the court stated that this section does not proscribe resistance to an illegal search. We are of the same opinion. In enacting section 31–1 the legislature has balanced the maintenance of order with the freedom to resist an invasion of one's privacy by prohibiting resistance only to the authorized acts of a police officer. The mere fact that the legislature has struck a different balance in the case of an arrest does not change this.

The State also argues that an "authorized" act is an act which the officer reasonably believes is authorized. The search warrant for Aubrey Young and 4401 W. West End St., clearly gave no express right to search the apartment of Willard Young, 4403 W. West End St., nor could it give an implied right because of the constitutional requirement that the person and place

24

to be searched must be described with particularity. US Const, amend IV; Ill Const, art II, § 6. Therefore, whether the officer's belief as to his authority was reasonable or unreasonable, he was not authorized to search the defendant's apartment and the act of the defendant in resisting him did not violate the statute.

The defendant next contends that she did not commit a battery when she struck or pushed the officer. The statute states:

> "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." . . . Ill Rev Stats 1965, c 38, § 12–3.

She maintains that she is innocent of this charge because she did not cause bodily harm to the officer or make contact of a provoking or insulting nature. There was no evidence of bodily harm but a blow to the chest or a shove in the back must be considered provoking to an officer who is prepared to conduct what he thinks is an authorized search. However, even though the defendant made contact with the officer in this manner, she is not guilty of a battery. Her use of force is permitted under section 7–2 of the Criminal Code as a defense of her dwelling.

Section 7–2 reads in part as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling."

When the policemen barged into the defendant's home the situation became tense. Three officers, ready for

trouble, claimed the right to search her apartment. An officer read the warrant and the error of the policemen in coming to the wrong place immediately was clear to her. She attempted to point out the mistake, but one of the officers asked if her name was Young and her affirmative answer confirmed the officers' belief that they were in the right apartment and they proceeded with the search. The defendant again objected and as she did so she struck or pushed one of them.

■ The officers were convinced that they had the right apartment; they were determined to accomplish their objective; the defendant was frightened and angry at the illegal intrusion; she was frustrated at her inability to communicate that her husband's name was Willard and that Aubrey Young did not live there. The officers refused to listen to her or believe her. Under these circumstances, we conclude that the defendant acted from a reasonable belief that her conduct was necessary to terminate the officer's unlawful entry into her dwelling and that her use of limited force was justified.

The convictions for resisting arrest and battery are reversed.

Reversed.

SCHWARTZ and SULLIVAN, JJ., concur.