THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES L. PRUITT, Defendant-Appellant.

Second District   No. 2—87—0537

Opinion filed March 2, 1988.

Phyllis J. Perko, of Harlovic & Perko, of West Dundee, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers and June E. Hartman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

A jury in the circuit court of McHenry County convicted defendant, Charles Pruitt, of the offense of resisting a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1). Defendant appeals, contending that the State failed to prove that the officers' attempt to arrest the defendant was an authorized act and that numerous instances of alleged misconduct by the prosecutor denied him a fair trial.

Defendant was lying on his living room couch watching television in the early afternoon of December 19, 1986. Deputy Randall Messamore of the McHenry County sheriff's department met defendant's son, Jim Pruitt, outside the house and asked to speak with defendant. Young Pruitt let Messamore in the house. The deputy sheriff informed defendant there was an outstanding Cook County warrant for his arrest on contempt charges. Defendant became indignant and demanded to know what the warrant was for. Defendant later testified that Deputy Messamore was "arrogant" and replied that defendant didn't need to know. Deputy Messamore did radio the dispatcher's office to make sure the warrant had not been withdrawn. Deputy Messamore did not have the warrant, which was kept in the dispatch room, but had a "face sheet" containing the defendant's description and birth date and indicating the warrant was for contempt. Deputy Messamore told defendant that he would have to go to the sheriff's police office at Woodstock to get the warrant "taken care of," but defendant refused, stating that it would take "an army" to remove him forcibly from his home.

Seeing that defendant would not go, Deputy Messamore radioed for assistance. A few minutes later, Sergeant John Klasen arrived. Both officers were in uniform, carried guns and arrived in marked squad cars. Defendant stipulated that he knew they were policemen. Defendant continued to protest that he had done nothing wrong, but Sergeant Klasen told him that he had no choice but to go to the county seat at Woodstock. Sergeant Klasen later testified that Deputy Messamore told defendant he would be released on recognizance. Dep-

uty Messamore and Sergeant Klasen then attempted forcibly to remove defendant. Messamore testified that he took one arm while Klasen took the other arm, and they attempted to lift defendant off the couch. Klasen testified that he held defendant's arms while Messamore held his legs. Defendant struggled to get free and at some point during the 1½- to 2-minute struggle kicked Messamore in the chest. The latter fell backward over an arm of the sofa but was not seriously injured.

Klasen radioed for further assistance, and two more officers arrived, Lieutenant Cropp and an unidentified Woodstock officer. When the last two officers arrived, defendant stopped struggling and agreed to accompany them to Woodstock. Since defendant was clad only in his underwear and a blanket, Messamore and Klasen accompanied him into his bedroom to get dressed. While defendant was dressing, Lieutenant Cropp called the Cook County sheriff's police and learned that the warrant was issued in a civil case involving an unpaid dental bill. Defendant testified that he did not agree to go to Woodstock until Cropp promised to call the Cook County authorities. The officers' testimony, however, indicated that defendant stopped struggling as soon as Cropp entered the room.

Based on this evidence, the jury found defendant guilty of resisting a peace officer. The court sentenced the defendant to 10 days' community service, and he appeals.

The statute under which defendant was convicted provides as follows:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." (Ill. Rev. Stat. 1985, ch. 38, par. 31—1.)

Defendant's first contention on appeal is that the State did not prove an essential element of the offense. Defendant asserts that the officers' act of arresting him was not an "authorized act" since they refused to disclose the exact nature of the warrant.

■ Defendant concedes that he failed to file a post-trial motion and thus has waived any alleged error on appeal unless such error falls within an exception to the waiver rule. Defendant argues, however, that the alleged error goes to the failure of the State to prove an essential element of the offense, namely, the authorized nature of the police action. The State responds that defendant is really challenging whether he was proved guilty beyond a reasonable doubt, an issue which may sometimes be subject to the waiver rule. Since we find defendant's allegations, if established, would negate an essential

element of the State's proof, we will consider the merits of this issue. *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75.

■■ ■ Defendant also concedes that a person has no right to resist forcibly even an unlawful arrest. (Ill. Rev. Stat. 1985, ch. 38, par. 7—7; *People v. Locken* (1974), 59 Ill. 2d 459, 464-65; *People v. Taylor* (1983), 112 Ill. App. 3d 3, 5.) This is because the public interest in discouraging violence and insisting on peaceable methods of obtaining release from unlawful custody outweighs the outrage felt by the individual who was subjected to unlawful police conduct. (*City of Joliet v. Schmidt* (1976), 35 Ill. App. 3d 978, 980.) Defendant, however, cites to a line of cases which defines "resistance," pointing out that an arrestee may protest and argue with the officers, and question them as to the reason for the arrest, without running afoul of section 31—1. (See *City of Pekin v. Ross* (1980), 81 Ill. App. 3d 127, 130; *City of Joliet*, 35 Ill. App. 3d at 980; *People v. Flannigan* (1971), 131 Ill. App. 2d 1059, 1063; see also *People v. Crawford* (1987), 152 Ill. App. 3d 992, 995; Annot., 44 A.L.R.3d 1018, 1032 (1972 & Supp. 1987).) However, these cases only establish that one may question the arresting officer without being guilty of resisting. They do not impose an affirmative duty on the officer to answer questions to the arrestee's satisfaction. Often, as was the case here, officers will not know specific details of a warrant that has been issued by a different jurisdiction. It would be unreasonable to require officers to allow a potentially dangerous suspect to remain at large while they attempted to ascertain the exact nature of the warrant and explain it to him.

■■ It is true that a conviction for resisting a peace officer requires an act of physical resistance. (*People v. Raby* (1968), 40 Ill. 2d 392, 399, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867, citing *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 959.) In the instant case, defendant, by his own testimony, admitted that he knew Messamore and Klasen were police officers, that they claimed they had a warrant for his arrest, and that he struggled with them. Both officers testified that defendant kicked Deputy Messamore, and defendant never denied this. When asked on cross-examination if he had kicked Messamore, defendant replied, "He grabbed ahold of my legs, and I removed him from my legs."

The evidence adequately establishes an act of physical resistance by defendant. He has never contested the validity of the underlying warrant. Even had the warrant been invalid and the arrest unlawful, the defendant still was not privileged to resist physically. Although defendant was entitled to question the officers about the warrant, they had no duty to provide satisfactory answers. That Lieutenant

Cropp gratuitously did so is not significant. He was apparently trying to make the officers' job easier by securing defendant's voluntary cooperation. The State proved all the elements of the offense beyond a reasonable doubt.

■■ ■ Defendant also contends that various instances of prosecutorial misconduct combined to deprive him of a fair trial. Defendant has waived consideration of this issue by his failure to file a post-trial motion. In addition, many of the alleged transgressions were not objected to at trial. Defendant nonetheless asks us to consider the issue as plain error.

Normally, improper prosecutorial comments will not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29; *People v. Janes* (1985), 138 Ill. App. 3d 558, 570.) Furthermore, objections to prosecutorial comments not raised by objections at trial or in a post-trial motion are waived unless it is plainly apparent that the error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from the error. (*People v. Johnson* (1986), 114 Ill. 2d 170, 198, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) The plain error rule will only be applied to such remarks when the evidence is closely balanced or the defendant was denied a fair trial. 107 Ill. 2d R. 615(a); *People v. Lucas* (1981), 88 Ill. 2d 245, 251.

In the instant case, the evidence was not closely balanced. Defendant's own testimony supports the jury verdict that he physically resisted the officers' attempt to arrest him. The officers' testimony was detailed and, with the exception of a couple of minor discrepancies, consistent. Furthermore, the actions and comments complained of could not have deprived defendant of a fair trial. Many of the allegedly improper comments were invited by defendant's remarks on cross-examination or by defense strategy. The remaining instances, even if arguably erroneous, were not sufficiently prejudicial to deprive defendant of a fair trial.

The judgment of the trial court is affirmed.

Affirmed.

NASH and REINHARD, JJ., concur.