THE CITY OF CHAMPAIGN, Plaintiff-Appellee, v. CHRISTIAN TORRES, Defendant-Appellant.

Fourth District    No. 4—03—0177

Argued October 15, 2003.—Opinion filed January 21, 2004.

MYERSCOUGH, J., dissenting.

Jeremy D. Grose (argued), of University of Illinois Student Legal Service, of Urbana, for appellant.

Frederick C. Stavins, City Attorney, of Champaign (Rhonda R. Olds (argued), Assistant City Attorney, of counsel), for appellee.

JUSTICE TURNER delivered the opinion of the court:

In June 2002, plaintiff, the City of Champaign (City), filed a complaint against defendant, Christian Torres, alleging he violated article 2, section 23—21(a), of the Champaign Municipal Code, 1985, as amended (Champaign Code) (Champaign Municipal Code, art. 2, § 23—21(a) (eff. April 15, 1988)), entitled "[r]esisting or obstructing a peace officer." After an October 2002 bench trial, the trial court found defendant guilty and fined him $175 plus court costs. In November 2002, defendant filed a motion to reconsider, which the court later denied.

Defendant appeals, asserting the trial court erred in finding him guilty because the peace officer was not engaged in an "authorized act," as required by the ordinance, when the act of resistance occurred. We disagree and affirm.

## I. BACKGROUND

At the October 2002 trial, Champaign city police officer Charles Shepard testified that, on April 30, 2002, at about 2:15 a.m., he responded to a report of a loud party at 505 South Fourth Street, Champaign, Illinois, an apartment near the campus of the University of Illinois. Upon arriving, Officer Shepard stood outside the apartment

for about 10 minutes, listening to the loud music emanating from the third-floor apartment. He then approached the apartment and knocked on its door three separate times.

At that point, defendant answered the door, opening it only to the width of his head. Officer Shepard asked defendant if he lived in the apartment, and defendant answered that he did not. The officer then asked defendant to have a resident of the apartment come to the door. Defendant agreed to do so and began to close the door. With his feet planted outside the apartment, Officer Shepard put his right arm on the door and stopped it from being shut. He then instructed defendant to leave the door open "to where it was" and repeated his request to speak with a resident of the apartment. Officer Shepard stated he was not trying to enter the apartment but wanted the door to remain open based on his experience working in the campus area. He explained that, in the past when he had allowed a door to close, the occupants would not open it again, leaving the "problem" unsolved. Defendant told Officer Shepard that he needed to shut the door before he retrieved a resident of the apartment.

Officer Shepard and defendant argued briefly about the door. At one point, defendant asked Officer Shepard if he had a search warrant, and Shepard responded no, "but [he] was not coming in." Defendant then opened up the door widely, said " 'See, there's nothing going on inside,' " and again attempted to shut the door. Officer Shepard put his arm "up against the door to stop it." Defendant again stated he needed to shut the door, opened it widely, and "slammed it very hard against [Officer Shepard's] right arm." Officer Shepard held the door open and informed defendant he was under arrest. The officer then grabbed defendant and pulled him out of the apartment. After a brief struggle, Officer Shepard handcuffed defendant.

Officer Shepard acknowledged he crossed the threshold of the apartment when defendant struck him with the door and when he grabbed defendant from the apartment.

Defendant testified on his own behalf. He stated he was a guest at a party and voluntarily opened the apartment door when he heard a knock. Defendant also testified that he showed the officer nothing was going on and went to close the door to where it was originally when Officer Shepard placed himself in front of the door and pulled defendant out.

At the conclusion of the bench trial, the trial court found defendant guilty of the ordinance violation. In November 2002, defendant filed a motion to reconsider. After a February 2003 hearing, the trial court denied the petition. This appeal followed.

## II. ANALYSIS

■ Article 2, section 23—21(a), of the Champaign Code provides, as follows:

"No person shall knowingly resist or obstruct the performance by one known to the person to be a peace officer for the City of Champaign of any authorized act within the peace officer's official capacity." Champaign Municipal Code, art. 2, § 23—21(a) (eff. April 15, 1988).

At issue here is the "authorized act" language, which is also contained in section 31—1(a) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/31—1(a) (West 2002) ("Resisting or obstructing a peace officer or correctional institution employee")). Defendant argues the officer's order to keep the door open and his physically keeping the door open were not "authorized acts" because they violated defendant's fourth amendment rights (U.S. Const., amend. IV).

Neither the Champaign Code nor the Criminal Code defines "authorized," but Illinois courts have defined the term as meaning " 'endowed with authority.' " *People v. Shinn*, 5 Ill. App. 3d 468, 472, 283 N.E.2d 502, 505 (1972), quoting *People v. Young*, 100 Ill. App. 2d 20, 23, 241 N.E.2d 587, 589 (1968). That definition provides little guidance.

In *State v. Gardiner*, 814 P.2d 568, 574 (Utah 1991), the Supreme Court of Utah addressed whether a police officer was "acting within the scope of his authority as a peace officer" (Utah Code Ann. § 76—5—102.4 (1990)) when he unlawfully entered a building to conduct a search. In interpreting the "scope of authority" language, the court looked to the Second Circuit's decision in *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967), which found the appropriate test was whether an officer was doing what he or she was employed to do or was engaging in a personal frolic. *Gardiner*, 814 P.2d at 574. Other state supreme courts have looked to the *Heliczer* test in interpreting similar language. See *State v. Doe*, 92 N.M. 100, 103, 583 P.2d 464, 467 (1978) ("in the 'lawful discharge of his duties' " (N.M. Stat. Ann. § 40A—22—23 (Repl. 1972)); *State v. Hatton*, 116 Ariz. 142, 148, 568 P.2d 1040, 1046 (1977) (discharging a duty of his office (Ariz. Rev. Stat. § 13—541(A) (1974))).

●2 We also find *Heliczer* provides the appropriate test for determining whether an officer's actions were "authorized." The fact a police officer's conduct is later determined to be unlawful should not divest the officer of his or her authority. See *Gardiner*, 814 P.2d at 575. In applying the *Heliczer* test, we find the evidence was sufficient to support the trial court's conclusion that Officer Shepard was engaged in an "authorized act" when defendant forcefully closed the door on Officer Shepard's arm.

The above interpretation of "authorized act" best serves the public interest. While the public has an interest in securing for its members the right to be free from unreasonable searches and seizures (*United States v. Ferrone*, 438 F.2d 381, 390 (3d Cir. 1971)), it also has an interest in discouraging violence and insisting on peaceable methods to resolve conflicts between citizens and their government (see *People v. Pruitt*, 166 Ill. App. 3d 679, 682, 520 N.E.2d 1113, 1115 (1988)). Self-help measures undertaken by an individual who objects to the legality of an entry can lead to violence and serious physical injury. See *Doe*, 92 N.M. at 102-03, 583 P.2d at 466-67. In fact, with resistance, violence is not only invited but can be expected. See *Hatton*, 116 Ariz. at 147-48, 568 P.2d at 1045-46. If an officer's unlawful entry is an unauthorized act, an individual may lawfully resist such an entry. Such a policy fundamentally opposes a civilized rule of law. See *People v. Abrams*, 48 Ill. 2d 446, 456, 271 N.E.2d 37, 43 (1971).

Moreover, the "victim" of an unlawful entry is not left without recourse. Under the "fruit of the poisonous tree doctrine," when police conduct results in a violation of a person's constitutional rights, any evidence that the State obtains by exploiting the constitutional violation is subject to suppression. *People v. McCauley*, 163 Ill. 2d 414, 448, 645 N.E.2d 923, 940 (1994). Thus, officers are not encouraged to violate a person's fourth amendment rights because any evidence obtained could be suppressed.

Accordingly, a proper accommodation of the above public interests requires a person claiming to be the subject of an unlawful entry by a peace officer to raise that claim in a court of law and not forcibly resist the officer's entry. See *Ferrone*, 438 F.2d at 390.

The same policy accommodation was reached in *Abrams*, 48 Ill. 2d at 455-57, 271 N.E.2d at 43-44, where the supreme court declined to extend the fruit of the poisonous tree doctrine to a defendant's acts that arise from and in reaction to unlawful police conduct. Further, while the supreme court did not discuss public policy in *People v. Locken*, 59 Ill. 2d 459, 464-65, 322 N.E.2d 51, 54 (1974), that holding accomplishes the same policy accommodation by holding an unlawful arrest is an "authorized act" under the resisting-or-obstructing-a-peace-officer statute (Ill. Rev. Stat. 1971, ch. 38, par. 31—1 (now see 720 ILCS 5/31—1(a) (West 2002))).

We recognize that other courts have declined to apply *Locken* to police conduct not involving an arrest. In *People v. Villarreal*, 152 Ill. 2d 368, 375, 604 N.E.2d 923, 926 (1992), the Supreme Court of Illinois stated the following:

"Defendants are correct in claiming that the crucial fact in

*Locken* was the undertaking of an unlawful *arrest* by a police officer, and that *Locken* is not relevant to obstruction of an unlawful *entry* into a person's home by a known officer." (Emphases in original.)

While it has been suggested that this language means an unlawful entry is not an "authorized act," it is clearly *dictum* as *Villarreal* dealt with an arrest and applied *Locken*. See *Villarreal*, 152 Ill. 2d at 376-77, 604 N.E.2d at 927. Moreover, the supreme court may simply have been noting that the reasoning in *Locken* would not apply to an unlawful entry situation as the court based its holding on section 7—7 of the Criminal Code (720 ILCS 5/7—7 (West 2002)), addressing a private person's use of force in resisting *arrest*. While that reasoning may not apply to an unlawful entry, it does not mean that an unlawful entry is not also "an authorized act." As stated, the policy considerations are similar for both an arrest and an entry.

Moreover, we agree with the Second District's affirmation of the trial court's dismissal of the obstructing-a-peace-officer (Ill. Rev. Stat. 1989, ch. 38, par. 31—1) complaints against the defendants in *People v. Hilgenberg*, 223 Ill. App. 3d 286, 585 N.E.2d 180 (1991). A violation of that section requires an act of physical resistance (*Pruitt*, 166 Ill. App. 3d at 682, 520 N.E.2d at 1115) and, by simply not opening the door, the defendants did not engage in such an act. That alone warranted dismissal of the complaint. However, we disagree with their finding the police were not engaged in an "authorized act" when they sought entry into the dwelling to investigate a complaint of unlawful consumption of alcoholic beverage and disorderly conduct. *Hilgenberg*, 223 Ill. App. 3d at 294, 585 N.E.2d at 186.

Additionally, we note that in both *Young*, 100 Ill. App. 2d at 24-25, 241 N.E.2d at 589-90, and *People v. Swiercz*, 104 Ill. App. 3d 733, 736-37, 432 N.E.2d 900, 902 (1982), the First District found a police officer's unlawful entry was not an "authorized act." However, we are not bound to follow the decisions of other districts of the state appellate court (*Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 64, 770 N.E.2d 721, 729 (2002)) and, for the reasons expressed in this opinion, we respectfully disagree with those decisions.

### III. CONCLUSION

Accordingly, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I do not agree with the majority's finding that Officer Shepard's acts were authorized. In reaching its conclusion, the majority has disregarded our supreme court's holding in *Villarreal* and the Third District's holding in *Hilgenberg*, 223 Ill. App. 3d 286, 585 N.E.2d 180. Further, a reversal in this case would not carry with it the public policy concerns voiced by the majority.

In *Villarreal,* our supreme court declined to characterize an unlawful police entry as an authorized act. *Villarreal*, 152 Ill. 2d at 375, 604 N.E.2d at 926. The *Villarreal* court applied its holding in *Locken*, 59 Ill. 2d 459, 322 N.E.2d 51, which held that an unlawful *arrest* is an authorized act, after it concluded that the focus of the officers in *Villarreal* was to arrest the defendant. *Villarreal*, 152 Ill. 2d at 375, 604 N.E.2d at 926. The defendants in *Villarreal* claimed that the *Locken* decision was not controlling in their case because *Locken* involved resisting an unlawful arrest by police officers. The defendants urged that, in contrast, their case involved an unlawful entry into their home.

In reaching its decision, the *Villarreal* court made the following clarification:

> "Defendants are correct in claiming that the crucial fact in *Locken* was the undertaking of an unlawful *arrest* by a police officer, and that *Locken* is not relevant to obstruction of an unlawful *entry* into a person's home by a known officer." (Emphasis added.) *Villarreal*, 152 Ill. 2d at 375, 604 N.E.2d at 926.

The majority dismisses *Villarreal* and the above excerpt as *"dictum."* 346 Ill. App. 3d at 219. *Dicta* come in two forms: *obiter* and *judicial. People v. Williams*, 204 Ill. 2d 191, 206-07, 788 N.E.2d 1126, 1136 (2003).

> "Judicial *dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case, but involve an issue briefed and argued by the parties. Black's Law Dictionary 465 (7th ed. 1999). Judicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court. *Cates v. Cates*, 156 Ill. 2d 76, 80[, 619 N.E.2d 715, 717] (1993)." *Williams*, 204 Ill. 2d at 206, 788 N.E.2d at 1136.

Our supreme court recently revisited this issue in *Nudell v. Forest Preserve District of Cook County*, 207 Ill. 2d 409, 799 N.E.2d 260 (2003). In *Nudell*, the supreme court applied its definitions of *obiter* and *judicial dictum* from *Cates*, affirming its holding that *judicial dictum* should be followed unless found to be erroneous. The *Villarreal* court's statement meets the definition of judicial *dictum*. Therefore, as mandated in *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d

715, 717 (1993), and *Nudell*, 207 Ill. 2d 406, 799 N.E.2d 260, it is binding upon our court.

The *Villarreal* court cited, with favor, the holdings in *Swiercz*, 104 Ill. App. 3d 733, 432 N.E.2d 900, and *Young*, 100 Ill. App. 2d 20, 241 N.E.2d 587. *Swiercz* held that an unlawful *entry* by an officer is not an authorized act for the purpose of the resisting statute; *Young* held that an unlawful *search* by an officer is not an authorized act for the purpose of the resisting statute. The *Villarreal* court stated that its holding was not inconsistent with *Swiercz* or *Young*: "Clearly, the case at hand is distinguishable from both *Swiercz* and *Young*, as the focus of the officers in this case was to arrest [a third party], and not to search defendants' home." *Villarreal*, 152 Ill. 2d at 375-76, 604 N.E.2d at 926.

In limiting its holding to instances of resisting *arrest*, the *Villarreal* court specifically refused to sanction resisting unlawful entry:

"[I]t is important to stress that the conclusion of this court is based upon the very narrow circumstances before us, and that we do not intend to expand the police power to invade the sanctity of an individual's home. We certainly do not intend to diminish an individual's rights and protections offered him under the fourth amendment." *Villarreal*, 152 Ill. 2d at 380, 604 N.E.2d at 928-29.

By recognizing an unlawful entry as an authorized act, the majority here has chosen to follow a path that our supreme court specifically declined to take. Our supreme court has been presented with an opportunity to authorize unlawful entry and has declined to do so. This precedent is binding on this court and must be followed.

The majority expands the definition of "authorized act" in applying *Heliczer*'s definitions. The *Heliczer* definitions may be appropriate in the context of agency law but are overly broad in the context of police activity. Under these sweeping definitions, any police activity conducted while the officer is "on the clock" is authorized. Police brutality in the search or arrest situation would now be considered "authorized" because it could not be categorized as a "frolic."

The majority also ignores *Hilgenberg*. The court in *Hilgenberg* considered facts similar to those before us: police officers approached a house in the course of investigating a nonfelony complaint (unlawful consumption of alcohol and disorderly conduct). *Hilgenberg*, 223 Ill. App. 3d at 290, 585 N.E.2d at 184. However, in *Hilgenberg*, 223 Ill. App. 3d at 287, 585 N.E.2d at 182, when the officers knocked on the door, the defendants refused to open the door or permit them entry. The trial court dismissed the obstructing-a-peace-officer complaints against all 36 defendants. Affirming the trial court, the *Hilgenberg* court stated:

"Although the officer may have been authorized in the course of his investigation to *request* that the door be opened or that he be permitted to enter, it is significant that the officer had no right to open that door himself or *insist* that it be opened or that he be allowed to enter. The occupants of the premises had a right to refuse the request." (Emphasis added.) *Hilgenberg*, 223 Ill. App. 3d at 290-91, 585 N.E.2d at 184.

In our case, Shepard had no right to insist that the door remain open. Shepard admitted that he entered the apartment when he physically prevented its closure. Absent exigent circumstances, a nonconsensual warrantless entry into a private residence while investigating a loud music complaint is unjustified. See *People v. Olson*, 112 Ill. App. 3d 20, 444 N.E.2d 1147 (1983).

Defendant did not commit an act of violence toward Shepard. He was never charged with aggravated battery. Defendant simply asserted his fourth amendment right to refuse a warrantless entry by attempting to close the door.

The majority implies that categorizing this officer's acts as unauthorized will encourage violence against the police. While it is true that an officer's unlawful and unauthorized entry may be lawfully resisted, an individual has no right to physically harm that officer. The Criminal Code, in the aggravated battery statute, protects police officers from violence. Aggravated battery is a Class 3 felony. 720 ILCS 5/12—4 (West 2002).

The aggravated battery statute protects officers during a broader range of police activity. Under the language of the aggravated battery statute, an officer need not be engaged in an "authorized act" to be protected from battery.

Further, the State would have the option of bringing both resisting-a-peace-officer and aggravated battery charges if an individual's resistance became violent. The majority should not attempt to rectify the State's failure to bring an aggravated battery charge with its opinion.