Docket No. 97926–Agenda 18–November 2004.

THE CITY OF CHAMPAIGN, a Municipal Corporation, Appellee, v. CHRISTIAN TORRES, Appellant.

Opinion filed February 17, 2005.

JUSTICE KARMEIER
(footnote: -6) delivered the opinion of the court:

Following a bench trial in the circuit court of Champaign County, defendant, Christian Torres, was found to have violated article 2, section 23–21(a), of the Champaign Municipal Code, as amended (Champaign Municipal Code, art. 2, §23–21(a) (eff. April 18, 1988)), which makes it unlawful to “knowingly resist or obstruct the performance by *** a peace officer *** of any authorized act within the peace officer’s official capacity.” The court fined defendant $175 and ordered him to pay court costs. The appellate court affirmed. 346 Ill. App. 3d 214. We granted defendant’s petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm the judgment of the appellate court.

According to the evidence presented at trial, defendant was a 21-year-old student at the University of Illinois in Champaign at the time of the events giving rise to this case. In April of 2002, he attended a party hosted by the teaching assistant for one of his classes. The party was held at the teaching assistant’s apartment and included a number of defendant’s classmates. Defendant did not live at the apartment and did not sleep there overnight. In his words, “I was just a party guest.”

The party lasted into the early hours of the morning. The Champaign police department eventually received a complaint of very loud noise and “disorderly subjects” at the apartment. Sergeant Charles Shepard of the Champaign police department was dispatched to investigate shortly after 2 a.m.

When Sergeant Shepard arrived at the scene, he stood outside the apartment for approximately 10 minutes to observe what was taking place. He heard very loud music and laughter emanating from the apartment and decided that he should contact the people inside about the situation. He therefore knocked on the apartment’s front door. Defendant answered, opening the door just wide enough to stick his head out and talk to Shepard. According to Shepard, defendant’s eyes were bloodshot, his speech was slurred, and he smelled heavily of alcohol. In Shepard’s estimation, defendant was very intoxicated.

Although Shepard did not identify himself as a police officer when he initially knocked on the door, there is no dispute that defendant recognized him as a police officer as soon as he looked outside. Shepard asked defendant if he lived there. When defendant responded that he did not, Shepard directed him to summon someone who did and to tell them that he, Shepard, needed to talk to them. Defendant responded by saying, “okay,” and then attempted to close the front door.

Based on his prior experience responding to loud, late night parties in the campus area, Sergeant Shepard was concerned that if he allowed defendant to close the door, no one would come back to talk to him, the problem would not be resolved, and the disturbance would continue unabated. Shepard therefore put his right arm on the door to prevent it from being shut. He told defendant “he could leave the door open to where it was,” but that defendant still needed to go find someone who lived in the apartment and tell them that the police needed to talk to them.

An argument between defendant and Shepard ensued. Defendant was insistent on closing the door while he left to summon the person who lived there. Shepard was equally insistent that the door remain open. In the course of the dispute, defendant asked Shepard if he had a search warrant. Shepard responded that he did not and that he did not need one because he had no intention of entering the premises. At this point, defendant opened the door and said, “See. There’s nothing going on inside.” Defendant then attempted to close the door again. When he did so, Shepard put his arm out to block it.

The dispute escalated. Defendant opened the door wide a second time and then tried to slam it shut. Shepard, in turn, used his right arm to again block the door and prevent it from being closed. The door struck Shepard “very hard,” at which point Shepard advised defendant that he was under arrest for obstructing a peace officer. Continuing to use his right arm to keep the door from closing, Shepard reached around with his left arm and pulled defendant from the apartment.

After a brief scuffle, Shepard subdued defendant by placing him in handcuffs. Defendant’s teaching assistant, who resided in the apartment, subsequently came forward and spoke to Shepard. The party was quickly disbanded, and Shepard left defendant with a written notice advising him that if he did not pay a fine of $175 within three weeks, he would have to appear in court to answer a charge that he had violated article 2, section 23–21(a), of the Champaign Municipal Code, as amended (Champaign Municipal Code, art. 2, §23–21(a) (eff. April 18, 1988)). That ordinance, which parallels section 31–1(a) of the Criminal Code of 1961 (720 ILCS 5/31–1(a) (West 2002)), makes it unlawful to “knowingly resist or obstruct the performance by *** a peace officer *** of any authorized act within the peace officer’s official capacity” (Champaign Municipal Code, art. 2, §23–21(a) (eff. April 18, 1988)).

When defendant elected not to pay the fine, the City of Champaign (the City) filed a complaint against him in the circuit court of Champaign County alleging that he had violated the municipal ordinance specified in the notice originally issued by Sergeant Shepard and asking that he be fined not less than $175 or more than $750. With the assistance of an attorney from the university’s student legal services office, defendant pleaded not guilty. The matter eventually proceeded to trial before the court, sitting without a jury, in October of 2002.

At trial, defendant argued that he could not be found to have knowingly resisted or obstructed a peace officer’s performance of an “authorized act within the peace officer’s official capacity” as those terms are used in the City’s ordinance because the acts in question, Shepard’s blocking the apartment door to prevent defendant from closing it, were not “authorized.” To the contrary, defendant asserted that those acts were illegal. Specifically, defendant contended that Shepard’s actions were “tantamount to an entry and a search of the private residence without a warrant” in violation of the fourth amendment to the United States Constitution (U.S. Const., amend. IV).

The circuit court rejected defendant’s argument, found that he had violated the ordinance as alleged by the City in its complaint, and ordered him to pay $175, the minimum fine authorized by the governing law, plus court costs. Defendant moved for reconsideration. Following a hearing, that motion was denied. Defendant then appealed to the appellate court. There, as in the trial court, defendant asserted that his conduct did not violate the City’s ordinance because the actions he resisted were undertaken in violation of his fourth amendment rights and therefore could not have been “authorized.”

With one justice dissenting, the appellate court rejected defendant’s argument and affirmed the judgment of the circuit court. 346 Ill. App. 3d 214. Defendant then petitioned this court for leave to appeal (177 Ill. 2d R. 315), which we allowed. Defendant subsequently elected to have the petition stand as his brief (177 Ill. 2d R. 315(g)), a brief was filed by the City, and oral argument was conducted. The matter is now before us for a decision on the merits.

In his appeal to our court, defendant challenges the appellate court’s judgment based on the same argument he has advanced throughout these proceedings. Reduced to its component parts, the argument is straightforward: (1) the City’s ordinance only prohibits resistance or obstruction to an “authorized act within the peace officer’s official capacity” (Champaign Municipal Code, art. 2, §23–21(a) (eff. April 18, 1988)), (2) police officers are not authorized to engage in illegal acts, (3) Sergeant Shepard’s actions were illegal because they violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV),
(footnote: 1) (4) because Shepard’s conduct was illegal, defendant’s actions in resisting that conduct were not directed to “any authorized act within [Shepard’s] official capacity” as the ordinance requires, and (5) because his actions were not directed to “any authorized act within [Shepard’s] official capacity,” defendant did not violate the ordinance.

In considering defendant’s argument, we begin by noting that resolution of this appeal does not turn on any disputed questions of fact. The pertinent facts are uncontroverted. The task before us is to determine how the relevant statutory terms and constitutional principles should apply to those uncontroverted facts. Where, as here, the question on appeal is limited to application of the law to undisputed facts, the standard of review is 
de novo
. 
Steinbrecher v. Steinbrecher
, 197 Ill. 2d 514, 523 (2001).

We further note that we are in no way constrained by the appellate court’s reasoning. It is the appellate court’s judgment, not the reasons given therefor, that is before us for review. 
Greenwald v. Baltimore & Ohio R.R. Co.
, 332 Ill. 627, 633 (1928). We may affirm on any basis supported by the record. See 
Home Insurance Co. v. Cincinnati Insurance Co.
, No. 97873, slip op. at 6 (December 2, 2004).

Defendant’s interpretation of the City’s ordinance is reminiscent of the traditional common law rule that a person has the right to use reasonable force to resist an illegal arrest. See J. Ghent, Annotation, 
Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest
, 44 A.L.R.3d 1078 (1972). That rule, however, is not followed in Illinois. Section 7–7 of the Criminal Code of 1961 expressly provides that

“[a] person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful.” 720 ILCS 5/7–7 (West 2002).

Our court has applied section 7–7 to cases brought under section 31–1 of the Criminal Code of 1961 (720 ILCS 5/31–1 (West 2002)), the state counterpart to the municipal ordinance at issue in this case. Section 31–1 makes it an offense to restrict or obstruct the performance by a peace officer of “any authorized act” within the peace officer’s official capacity. 720 ILCS 5/31–1 (West 2002). In 
People v. Locken
, 59 Ill. 2d 459 (1974), we construed section 31–1 in conjunction with section 7–7 and held that an arrest made by a peace officer is an “authorized act” even if the arrest is unlawful. “Consequently, resistance of even an unlawful arrest by a known officer” is a violation of the statute. 
People v. Locken
, 59 Ill. 2d at 465.

People v. Locken
 was followed by our court in 
People v. Villarreal
, 152 Ill. 2d 368 (1992). In 
Villarreal
, the defendants were charged with violating section 31–1 of the Criminal Code of 1961 and various other offenses after they attempted to forcibly prevent police officers from making a warrantless and nonconsensual entry into their residence to arrest a third person. Defendants moved to quash their arrests and for dismissal of the charges against them, arguing, among other things, that they could not be prosecuted for resisting or obstructing the police under section 31–1 because the officers’ entry was illegal. The circuit court granted defendants’ motions. After the matter proceeded through the appellate court, we allowed the State’s petition for leave to appeal and reversed and remanded for further proceedings.

Reiterating the rule stated in 
People v. Locken
, we held that the resistance of even an unlawful arrest violates section 31–1. Because defendants knew that the police were entering the residence for the sole purpose of effectuating the arrest of the third person, we ruled that they “were precluded from resisting the officers’ attempt to enter the residence ***, regardless of whether the arrest *** would have been legal.”
 Villarreal
, 152 Ill. 2d at 376-77.

The defendants in 
Villarreal
 sought to validate their use of force by invoking section 7–2 of the Criminal Code of 1961, which provides that

“[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other’s unlawful entry into or attack upon a dwelling.” 720 ILCS 5/7–2 (West 2002).

We noted, however, that application of that statute here would conflict with sections 7–7 and 31–1 of the Code. Because sections 7–7 and 31–1 deal specifically with the use of force against peace officers, while section 7–2 applies generally to the use of force against anyone, we concluded that the specific provisions of sections 7–7 and 31–1 controlled. That being so, we held that the defendants could not lawfully employ physical force to prevent the police from entering their residence to effectuate the arrest. The circuit court therefore erred in allowing defendants’ motion to quash arrest and dismiss the charges. 
People v. Villarreal
, 152 Ill. 2d at 379-81.

Unlike 
Villarreal
, the present case does not involve a situation where a peace officer entered the premises for the sole purpose of effectuating an arrest. Indeed, Sergeant Shepard’s testimony at trial makes clear that when he arrived at the apartment, he had no intention of making an arrest at all. He simply wanted to speak to a resident of the apartment in order to address the complaint of noise and disorderly conduct he had been dispatched to investigate.

Where, as here, a peace officer is not undertaking an arrest, section 7–7 is inapplicable. In such cases, our appellate court has held that the officer’s warrantless, nonconsensual, and forcible entry into a person’s residence in violation of the fourth amendment will not be considered an “authorized act” for purposes of section 31–1 of the Criminal Code. See 
People v. Swiercz
, 104 Ill. App. 3d 733, 736-37 (1982). That is so even if the entry is undertaken pursuant to an official police investigation. 
People v. Hilgenberg
, 223 Ill. App. 3d 286, 294 (1991). Accordingly, where a police officer is not trying to make an arrest, section 31–1 would not prohibit a person from using reasonable force to prevent the officer from making an unconstitutional entry into his or her apartment. See 
People v. Young
, 100 Ill. App. 2d 20, 23-26 (1968).

Unlike the defendants in the foregoing appellate court cases, the defendant in the matter before us today was not charged with violating section 31–1 or any other provision of the Criminal Code of 1961. This dispute involves the violation of a municipal ordinance. Municipal ordinance violations do not fall within the definition of an “offense” under either the Criminal Code of 1961 (see 720 ILCS 5/2–12 (West 2002)) or the Code of Criminal Procedure of 1963 (725 ILCS 5/102–15 (West 2002)), and because violation of the ordinance at issue in this case is punishable only by a fine and not by incarceration, the ordinance is not among those that the Municipal Code allows to be prosecuted as a criminal offense (see 65 ILCS 5/1–2–1.1 (West 2002)).

The defendant nevertheless contends that we should follow the appellate court’s construction of the criminal provisions in 
People v. Hilgenberg
, 223 Ill. App. 3d 286 (1991), 
People v. Swiercz
, 104 Ill. App. 3d 733 (1982), and 
People v. Young
, 100 Ill. App. 2d 20 (1968), to hold that defendant’s actions in this case were not unlawful. Without addressing the merits of those decisions, we note simply that they are inapposite. Central to each of those cases was that entry onto the premises by law enforcement officers violated or would have violated the defendants’ rights under the fourth amendment to the United States Constitution (U.S. Const., amend. IV). Although the defendant in this case asserts that it “is uncontested that the actions of the police [here] clearly violated the Fourth Amendment to the U.S. Constitution,” the City has argued vigorously that Sergeant Shepard’s actions did not trammel on defendant’s fourth amendment rights. We believe the City’s position is well taken.

Defendant, as we noted at the outset of this opinion, did not live at the apartment Sergeant Shepard was investigating. He was not even an overnight guest. By his own admission, he was just there to attend a party hosted by one of his teaching assistants. Illinois courts have repeatedly held that persons who are guests or merely present in someone else’s home or on another person’s property when it is searched do not have the right to contest the legality of that search and seizure. See 
People v. Wimbley
, 314 Ill. App. 3d 18, 23 (2000); 
People v. Ervin
, 269 Ill. App. 3d 141, 147 (1994).
(footnote: 2) Accordingly, the defendant in this case had no right to complain that the actions by Sergeant Shepard violated the fourth amendment. From the record before us, it appears that the only person entitled to challenge the constitutionality of Shepard’s actions in blocking the front door of the apartment was the teaching assistant who lived there. The teaching assistant, however, not only did not protest Shepard’s presence, he cooperated fully when the matter was brought to his attention. He spoke with Shepard, turned the music off, and sent everyone home.

Because defendant has no legally cognizable right to challenge the constitutionality of Sergeant Shepard’s conduct, he cannot assert that Sergeant Shepard violated the fourth amendment when he prevented defendant from closing the door to the apartment. During oral argument, defendant’s attorney attempted to overcome this impediment by arguing that even though defendant’s own fourth amendment rights may not have been abridged, Sergeant Shepard’s conduct in blocking the door necessarily required that he cross the threshold of the apartment. In defendant’s view, the mere act of breaking the plane of the apartment’s entrance was sufficient, in itself, to establish a fourth amendment violation and render Shepard’s actions unlawful.

Defendant’s argument fundamentally misconstrues the nature of fourth amendment guarantees. The fourth amendment protects people, not places. 
Katz v. United States
, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511 (1967). Accordingly, whether the fourth amendment has been abridged cannot be assessed simply by looking at whether and to what extent a police officer has breached the boundaries of a particular structure. For fourth amendment purposes, a structure’s boundaries have no significance standing alone. They are relevant only insofar as they pertain to the reasonable privacy expectations of a particular person.

Our court recently touched on these issues in 
People v. Rosenberg
, No. 96834 (November 18, 2004). We held there that because fourth amendment rights attach to people, not places, the relevant inquiry is whether the disputed search and seizure has infringed an interest of the defendant which the fourth amendment was designed to protect. Accordingly, a defendant seeking to claim the protections of the fourth amendment must demonstrate that he or she 
personally
 has an expectation of privacy in the place searched and that his or her expectation is reasonable. 
People v. Rosenberg
, slip op. at 6-7. Under the authorities cited above, the defendant in this case, as a mere party guest, can make no such showing.

Defendant’s inability to assert a fourth amendment violation is fatal to his defense. Without such a violation, defendant has no basis for claiming that Shepard’s actions exceeded his legal authority and were not “authorized” within the meaning of the City’s ordinance. Aside from the fourth amendment issue, no other grounds have been asserted which would bring the legality of Shepard’s actions into question. The appellate court therefore ruled correctly when it upheld the circuit court’s judgment against defendant for violating the City’s ordinance.

As an alternative basis for assailing the appellate court’s judgment, defendant argues that his conduct was justified under section 7–2 of the Criminal Code of 1961 (720 ILCS 5/7–2 (West 2002)), a provision discussed earlier in this opinion. Defendant has not cited any authority addressing the applicability of that provision of the Criminal Code to ordinance violation cases. Moreover, as we have already noted, violation of the ordinance at issue in this case is punishable only by a fine and not by incarceration. It is therefore not among those that the Municipal Code allows to be prosecuted as a criminal offense.

Under these circumstances, the relationship defendant seeks to establish between section 7–2 of the Criminal Code and municipal ordinances of the type involved here is problematic. This is not an appropriate case to engage in further analysis of the question, however, for even if we agreed with defendant’s position, it would not affect the outcome of these proceedings. Even if we assumed, for the sake of argument, that section 7–2 were available as a defense to a complaint filed under article 2, section 23–21(a), of the Champaign Municipal Code, as amended, defendant’s conduct would not fall within its provisions. By its terms, the statute only justifies the use of force to prevent or terminate “unlawful” entries. The sole basis for defendant’s claim that the entry here was unlawful is that Sergeant’s Shepard’s conduct violated the fourth amendment. As we have just discussed, that claim is meritless.

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed.

JUSTICE FREEMAN, dissenting:

In this case, we are called upon to address a Champaign municipal ordinance which makes it illegal to “knowingly resist or obstruct the performance by *** a peace officer *** of 
any authorized act
 with the peace officer’s official capacity.” (Emphasis added.) Champaign Municipal Code, art. 2, §23–21(a) (eff. April 18, 1988). By its terms, this ordinance only makes illegal resistance to or obstruction of an “authorized” act. The ordinance does not, however, define the term “authorized”; therefore, it would appear then that the only reason why we would grant leave to appeal in such a case is so that we might address what could be the only issue of real importance in the prosecution of cases under this ordinance or statutes similar to it:
(footnote: 3) What constitutes a proper or “authorized” act or order? In this particular case, the issue would seem clear: In investigating a complaint of noise, was Sergeant Shepard’s order to leave the door open authorized? Unfortunately, my colleagues do not answer this question. Because they fail to examine whether Sergeant Shepard’s actions were authorized, I cannot join in their opinion and respectfully dissent. 

Rather than address the critical question in this case of whether Sergeant Shepard’s order to leave the door open was “authorized,” the court today holds that Sergeant Shepard’s actions did not “trammel on” defendant’s fourth amendment rights solely because defendant did not live at the apartment Shepard was investigating. Slip op. at 8. Noting that “Illinois courts have repeatedly held that persons who are guests or merely present in someone else’s home or on another person’s property when it is searched do not have the right to contest the legality of that search and seizure,” the 
court holds that defendant “had no right to complain that the actions by Sergeant Shepard violated the fourth amendment.” Slip op. at 8. 
Leaving aside the fact that this case does not concern an actual search or seizure, the court’s analysis leaves defendant in the untenable position of being unable to challenge whether Sergeant Shepard’s initial demand that the apartment door be kept open was “authorized,” as is required under the ordinance in question.

I note that in ruling that defendant had violated the municipal ordinance, the circuit court found that the germane question in this case was whether defendant’s actions defeated the “lawful authority” of the officer. The circuit court correctly believed that to answer that question, one first had to define what constituted the “the lawful authority” of the officer. According to the circuit court’s ruling, “[t]he door is opened, he [Sergeant Shepard] has a right to look in, he has right to continue to look in to that premises. Does the defendant take an act? Yes. He’s not refusing to consent to entry. He’s taking an affirmative act in order to prevent the officer from doing what he’s lawfully entitled to do, that is look through an open door which has been opened consensually.” The appellate court upheld the circuit court’s finding on the basis that Officer Shepard “was engaged in an ‘authorized act’ when defendant forcefully closed the door on Officer Shepard’s arm.” 346 Ill. App. 3d at 217. 

 According to the facts, after Champaign police received a complaint about a loud party, Sergeant Shepard went to the address that was the subject of the complaint and heard loud music emanating from the apartment in question. The officer observed the location for about 10 minutes, decided to speak to a resident of the apartment, and, to that end, knocked on its door. Defendant answered the door, opening it only slightly. Sergeant Shepard asked defendant if he was a resident of the apartment, and defendant responded truthfully that he was not. At this point, defendant’s behavior was not a problem. Sergeant Shepard then requested that defendant go and get a resident of the apartment so that the officer could speak with that person. Defendant indicated he would comply by agreeing to do so. Defendant then began to shut the door, at which point the officer told defendant not to close the door, but to leave it open. By what authority does the officer have to order an occupant of a private residence, who is complying with the officer’s request to get a resident of the premises, to keep the front door to that private residence ajar? The majority’s analysis fails to provide us with the answer, as it holds that “[d]efendant’s inability to assert a fourth amendment violation is fatal to his defense. Without such a violation, defendant has no basis for claiming that Shepard’s actions exceeded his legal authority and were not ‘authorized’ within the meaning of the City’s ordinance.” Slip op. at 9. 

As I noted above, the circuit court found that, once defendant answered the door, the police officer had the “right” to “continue” to look into the premises. I disagree. Defendant opened the door, ascertained that someone was present, acknowledged that the person knocking was a police officer, and agreed to comply with that officer’s request to get the owner. It cannot be said that defendant’s act of initially and consensually opening the front door authorized Sergeant Shepard to insist that the door be kept open while the owner was being summoned. I know of no law which authorizes a police officer to insist, in the first instance, that a front door of a private residence be kept open while an occupant complies with a request to bring the owner to the door. While I understand that Sergeant Shepard may have had prior unsuccessful experiences in having people return to the front door, nothing about Shepard’s interaction with defendant suggested that the same thing would happen here. 

Contrary to my colleagues in the majority, I believe 
People v. Hilgenberg
, 223 Ill. App. 3d 286 (1991), provides the proper analysis for such cases. There, 36 defendants were charged with the offense of obstructing a peace officer, in that they “ ‘refused to open the door or permit *** entry’ ” to the officer when he investigated a complaint of unlawful consumption of alcoholic beverages and disorderly conduct in connection with a loud party. 
Hilgenberg
, 223 Ill. App. 3d at 287. In affirming the circuit court’s dismissal of the charges, the appellate court held as follows:

“Although the officer may have been authorized in the course of his investigation to 
request
 that the door be opened or that he be permitted to enter, it is significant that the officer had no right to open that door himself or 
insist
 that it be opened or that he be allowed to enter. The occupants of the premises had a right to refuse the request.” (Emphases in original.) 
Hilgenberg
, 223 Ill. App. 3d at 290-91.

The court further noted that “[a]lleging ‘an official police investigation’ does not constitute an ‘authorized’ act requiring defendants to open the door *** [because] [a]bsent specific factual allegations that the officer was acting on the basis of a warrant, consent, or probable cause to arrest coupled with exigent circumstances, the complaint does not state an offense.” 
Hilgenberg
, 223 Ill. App. 3d at 294. For these reasons, the court concluded that the officer could not lawfully order the door to be opened. 

The court states that 
Hilgenberg
 “cannot be read as supporting a contrary conclusion” because the opinion does not describe the relationship of the defendants to one another or to the dwelling they occupied. Slip op. at 8 n.2. The court has misconstrued the concept of standing in this case. Defendant, who is being prosecuted under this ordinance, certainly has standing to challenge whether the officer’s actions were authorized. Sergeant Shepard had no legal right to insist that defendant leave the door to the apartment open while defendant went to fetch the owner of the apartment. In my view, the fourth amendment does not come into play here since Sergeant Shepard technically did not “search” the apartment nor did he “seize” anything from it.
(footnote: 4) 

I believe the court may be straining in its analysis in this case because defendant forcefully slammed the apartment door on Sergeant Shepard’s right arm. Although the law allows for resistance to unauthorized police acts, no citizen has the right to physically harm a peace officer. Under the Criminal Code, it is a Class 3 felony to commit a battery upon a peace officer. See 720 ILCS 5/12–4(b)(6) (West 2002). Under the language of the aggravated battery statute, an officer need not be engaged in an “authorized act,” but rather only be injured while engaged in “official duties.” See 720 ILCS 5/12–4(b)(6) (West 2002). Thus, the statute protects officers from violence during a broader range of police activity. It seems to me that defendant’s actions fall under the offense of aggravated battery and not resisting an officer. In this case, however, defendant was not charged with aggravated battery. The court should not use its opinion to rectify the State’s failure to do so.

For the foregoing reasons, I dissent.

JUSTICE KILBRIDE joins in this dissent.

FOOTNOTES
-6:     
* 
Justice Karmeier succeeded Justice Rarick in office after this case was taken under advisement.  He has reviewed the record, the briefs and the audio recordings of the oral argument
.

1:     
1
 In his petition for leave to appeal, which he elected to have stand as his brief, defendant argues that Shepard’s actions also contravened article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6)
. We note, however, that defendant did not raise this claim in the circuit court.  From the appellate court’s opinion, it does not appear that he raised the claim in that court either.  The issue is therefore not properly before us.  See, 
e.g.
,
 In re Liquidations of Reserve Insurance Co.
, 122 Ill. 2d 555, 567-68 (1988). 

2:     
2
 
People v. Hilgenberg
,  223 Ill. App. 3d 286 (1991), cannot be read as supporting a contrary conclusion. Although the defendants in that case were numerous, the opinion does not describe their relationship to one another or to the dwelling they occupied when the sheriff appeared at the front door, asked that the door be opened and requested permission to enter. If the State believed  that any of the individual defendants lacked standing to challenge the constitutionality of the sheriff’s actions, it was incumbent on it to raise that challenge, as the City has done in this case. There is no indication in the appellate court’s opinion that such a challenge was made. 

3:     
3 
A provision in the Criminal Code of 1961 makes it a Class A misdemeanor for a person to “knowingly resist[ ] or obstruct[ ] the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity.” 720 ILCS 5/31–1(a) (West 2002). Like the Champaign ordinance, the statute does not define the term “authorized.”

4:     
4 
Of course, had defendant left the door open as the officer had requested, anything seen in “plain view” may have given the officer the probable cause to expand the nature of his investigation. For example, had he seen a partygoer smoking marijuana or snorting cocaine, the investigation would have expanded from a simple disturbing the peace complaint to a drug raid.  In such a situation, the State would surely argue that defendant did not have to leave the door open, but merely “consented” to the request to leave the door open.