Docket No. 96834–Agenda 5–September 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ADAM ROSENBERG, Appellee.

Opinion filed November 18, 2004.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial in the circuit court of La Salle County, defendant Adam Rosenberg was convicted of one count of controlled substance trafficking (720 ILCS 570/401.1(a) (West 1998)), involving 30 or more grams of a substance containing ketamine. He was sentenced to a term of 18 years’ imprisonment.

Defendant, a resident of Massachusetts, was arrested based upon a traffic stop of his alleged accomplice, David Belmonte, and a subsequent search of the car Belmonte was driving. The search revealed several boxes of ketamine in the trunk of the car. Defendant was not present in the car or in the State of Illinois when the stop took place. Prior to trial, defendant filed a motion to quash arrest and suppress evidence. He alleged that on February 22, 2000, a police officer stopped Belmonte, also a resident of Massachusetts, for a traffic violation. Belmonte was driving a rental car and presented the officer with a valid driver’s license and rental agreement for the car. The officer issued a warning to Belmonte for following too closely and then asked for consent to search the car. Belmonte consented and a search was conducted. Nothing incriminating was found in the passenger compartment of the car. Belmonte did not give officers a key to the trunk. They gained access to the trunk through the backseat. An officer reached into the trunk and felt several boxes. He opened one of the boxes and removed a small bottle containing a clear liquid. Belmonte was arrested for possession of a controlled substance. Belmonte gave a statement implicating defendant and claimed that the boxes in the trunk belonged to defendant. Based on this information, police arrested defendant. Defendant’s motion further alleged that neither he nor Belmonte consented to a seizure of the boxes in the trunk of the rental car and that the conduct of the officers constituted an illegal seizure. Defendant asked the court to quash his arrest and suppress all evidence obtained through the illegal search and seizure.

Belmonte was called by the prosecution under a grant of use immunity to testify at the grand jury proceeding that resulted in defendant’s indictment. He later testified at defendant’s trial under a grant of use immunity. Defendant was permitted to subpoena Belmonte from Massachusetts to appear in Illinois at the hearing on defendant’s motion to suppress. That hearing was held on June 14, 2001. Initially, defense counsel advised the circuit court that defendant was not contesting the search of the rental car or Belmonte’s apparent authority to consent to that search. Counsel advised the court that defendant intended to establish that the police seized the boxes illegally because they lacked probable cause to believe the boxes contained a controlled substance. Counsel argued that while Belmonte gave consent to search the car, he did not give consent to seize the boxes. In response to questions from the court as to whether his motion established any ownership or possessory interest in the items seized, counsel stated that he intended to call Belmonte to testify as to those matters. However, Belmonte’s retained counsel informed the court that he had advised his client to assert his fifth amendment privilege against self-incrimination because a charge was pending against Belmonte in connection with his transportation of the ketamine. Defendant’s counsel then asked the court to compel the prosecution to grant use immunity to Belmonte so that he could testify at the suppression hearing. Counsel argued that it was a violation of defendant’s due process rights to allow the prosecution to choose the hearings at which Belmonte would receive use immunity. The prosecutor responded that Belmonte had been given no special consideration for his grand jury testimony and that he had given no indication that he would plead guilty to the charges against him. The prosecutor also claimed that Belmonte could be facing federal charges, as well as charges in other Illinois counties. The circuit court denied defendant’s request to force the prosecution to grant Belmonte use immunity, saying that it lacked the authority to do so. The court indicated, however, that if Belmonte testified at trial, defendant could ask for a reconsideration of the court’s ruling.

Defense counsel called Belmonte to testify at the suppression hearing and Belmonte asserted his fifth amendment privilege. Counsel then called Illinois State Police trooper Keith Chestnut to testify. Chestnut, a trooper since 1998, stopped Belmonte for a traffic violation. When asked if Chestnut could search his car, Belmonte gave consent. Chestnut denied that Belmonte told him the boxes in the trunk belonged to defendant. Belmonte gave that information to task force agents and Chestnut was not present for that conversation. According to secondhand information provided to him, Chestnut learned that Belmonte said defendant gave him the boxes found in the trunk in San Diego and that Belmonte was to transport the boxes cross-country to Boston, where defendant would retrieve them. Other officers arrived on the scene. After Belmonte gave consent to the search, Chestnut asked for the key to the trunk, as the trunk release on the dashboard of the car, as well as the release on the key fob, did not work. Belmonte stated that was the way the car was given to him by the rental agency. After officers accessed the trunk through the backseat and found the drugs, Chestnut arrested Belmonte and Belmonte gave him a key to the trunk. The vials removed from the trunk were labeled ketamine. Chestnut recognized ketamine from his prior experience as a local police officer with the Freeport, Illinois, police department, where he heard about burglaries of veterinary clinics from which ketamine was stolen. He also took classes on controlled substances, but those took place subsequent to Belmonte’s arrest.

At the conclusion of defendant’s evidence, the circuit court granted the State’s motion for a directed finding, on the ground that defendant had failed to establish a sufficient privacy interest to contest the search of the rental car or the seizure of the boxes containing the ketamine. The court also ruled that the police had probable cause to seize the ketamine.

Defendant filed a motion to reconsider the court’s ruling on the probable cause issue based upon alleged misstatements by Chestnut as to his prior experience with ketamine. At a hearing held on that motion, Robert Smith, deputy chief of police with the Freeport police department, testified that he performed a computer database search of the department’s records of veterinary clinic burglaries from 1990 to 1998. He found just one burglary from 1996. The only thing stolen was United States currency. Jeff Downing, a Freeport police officer who investigated the 1996 burglary, testified that checks and cash were taken from the clinic and that no medicines were taken. Although there were a couple of burglaries at the Freeport Animal Hospital, which is within the jurisdiction of the Stephenson County sheriff’s department, Downing did not receive any information as to what was taken. Based upon this testimony, the circuit court vacated its order granting the State’s motion for directed finding.

The court conducted a further hearing on defendant’s motion to suppress evidence. The prosecution called Richard Roodhouse, deputy sheriff of the Stephenson County sheriff’s department. He testified that he investigated a burglary at the Freeport Animal Hospital in April 1997. Several bottles of ketamine were taken. From 1992 to 1998, there were 13 burglaries to veterinary clinics in Freeport or Stephenson County. Roodhouse shared information on those burglaries with the Freeport police department. Only during the April 1997 burglary was ketamine taken.

Sergeant Robert Cessna of the Illinois State Police testified that he assisted Chestnut in the search of the rental car Belmonte was driving. Belmonte told them he did not have a key to the trunk. They gained access through the backseat. Cessna reached into the trunk and felt some cardboard boxes. Because of the angle, he was not able to open any of the boxes, so he cut into the side of one of the boxes to see what was inside. He felt glass and cut a larger hole so he could remove it from the box. It was a 10 milliliter vial of a clear liquid. On the vial was a label stating that it was ketamine. The label also contained the word “caution” and stated that “federal law restricts this drug to use by or on the order of a licensed veterinarian.” Cessna showed the bottle to Chestnut.

Chestnut testified that when he looked at the label on the vial Cessna handed him, he recalled from his academy training that ketamine is a controlled substance. When he was a police officer in Freeport, Chestnut was aware that ketamine was not a controlled substance at that time. At the close of the hearing, the circuit court found that the cautionary label on the vial of ketamine gave the officers probable cause to seize it and conduct a further investigation to see whether the clear liquid inside the vials was in fact ketamine.

Defendant filed a motion to preclude Belmonte from testifying at the trial, alleging that, by refusing to offer immunity to Belmonte at the suppression hearing and by not insisting on trying Belmonte, the prosecution improperly manipulated the criminal process to protect Belmonte and to prevent him from providing testimony helpful to the defense. Defendant claimed that he was prejudiced at the suppression hearing because he was unable to challenge the legality of the stop and search of the rental car, as well as the nature of Belmonte’s role in the crime. The circuit court denied the motion, noting that defendant would be able to cross-examine Belmonte at trial.

At trial, Belmonte testified that he had known defendant since high school. Belmonte borrowed some money from defendant and, a few days later, defendant asked Belmonte to transport the ketamine, in return for which defendant would forgive Belmonte’s debt. The two men flew from Boston to San Diego, where defendant rented a car using the driver’s license and credit card of his brother, Jon Rosenberg. Defendant placed boxes in the trunk. He disengaged the automatic trunk release button inside the car and he and Belmonte each took a key to the trunk in case the car was stopped. Defendant told Belmonte what route to take to get to Boston and advised him to avoid a certain checkpoint in San Diego. While Belmonte was driving, he and defendant kept in touch via their cell phones. After Chestnut stopped him for the traffic violation, Belmonte gave consent to search the car. He told the officers he did not have a trunk key. However, after watching the officers access the trunk through the backseat, Belmonte gave his key to one of the officers. Belmonte testified that he was charged with possession of a controlled substance with intent to deliver and that, due to his cooperation with the State, he was not charged with drug trafficking. Defendant did not testify at trial.

Following the trial, defendant filed posttrial motions. In none of the motions did defendant argue that the circuit court’s refusal to force the prosecution to grant Belmonte use immunity at the suppression hearing deprived defendant of due process. Instead, defendant argued that Belmonte should have been precluded from testifying at the trial. The circuit court denied all motions.

On appeal, defendant argued that (1) the prosecution deprived him of due process by refusing to grant Belmonte use immunity at the suppression hearing, (2) the circuit court erred in denying his motion to suppress, (3) his conduct did not constitute trafficking within the meaning of the statute, and (4) the penalty for controlled substance trafficking is unconstitutionally disproportionate. The appellate court vacated the circuit court’s order denying the motion to suppress and remanded for a new hearing on the motion, finding that the prosecution had deprived defendant of due process by refusing to grant use immunity to Belmonte at the suppression hearing. The court retained jurisdiction over the remaining issues should it become necessary to address them at a later time. 341 Ill. App. 3d 893. We granted the State’s petition for leave to appeal. 177 Ill. 2d R. 315. Because we conclude that Belmonte’s testimony at the suppression hearing was not necessary to establish any legitimate expectation of privacy in the search of the boxes and seizure of the ketamine that defendant may have had, we reverse the judgment of the appellate court and remand to that court to address the issues over which it retained jurisdiction.

The question of whether a defendant has established a legitimate expectation of privacy sufficient to permit him to contest a search or seizure is a question of law and our review is 
de novo
. 
People v. Bower
, 291 Ill. App. 3d 1077, 1079 (1997).

The fourth amendment to the United States Constitution protects the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV. Similarly, article I, section 6, of the Illinois Constitution of 1970 provides that the “people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures.” Ill. Const. 1970, art. I, §6. The fourth amendment protects people, not places. 
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967). Accordingly, fourth amendment rights are “personal rights, and *** they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.” 
Simmons v. United States
, 390 U.S. 377, 389, 19 L. Ed. 2d 1247, 1256, 88 S. Ct. 967, 974 (1968). Therefore, to claim the protection of the fourth amendment, a defendant must demonstrate that he or she personally has an expectation of privacy in the place searched and that his or her expectation is reasonable, that is, an expectation of privacy that has “ ‘a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.’ ”
 Minnesota v. Carter
, 525 U.S. 83, 88, 142 L. Ed. 2d 373, 379, 119 S. Ct. 469, 472 (1998), quoting 
Rakas v. Illinois
, 439 U.S. 128, 143 n.12, 58 L. Ed. 2d 387, 401 n.12, 99 S. Ct. 421, 430 n.12 (1978). Whether one has a legitimate expectation of privacy in an area searched is measured by an objective standard drawn from common experience. 
People v. Kidd
, 178 Ill. 2d 92, 135 (1997). In 
Rakas
, the United States Supreme Court abandoned the concept of “standing” to describe whether an accused could assert a fourth amendment violation, finding that this issue is more properly analyzed in terms of substantive fourth amendment doctrine. Thus, the question is whether the disputed search and seizure has “infringed an interest of the defendant which the Fourth Amendment was designed to protect.” 
Rakas
, 439 U.S. at 140, 58 L. Ed. 2d at 399, 99 S. Ct. at 429.

This court has identified several factors to be considered in determining whether a defendant has a legitimate expectation of privacy in the place searched or the property seized: (1) property ownership, (2) whether the defendant was legitimately present in the area searched, (3) the defendant’s possessory interest in the area searched or the property seized, (4) prior use of the area searched or property seized, (5) ability to control or exclude others’ use of the property, and (6) a subjective expectation of privacy in the property. 
People v. Johnson
, 114 Ill. 2d 170, 191-92 (1986). The question of whether one has a legitimate expectation of privacy such that he can claim the protection of the fourth amendment is to be answered in light of the totality of the circumstances of the particular case. 
Kidd
, 178 Ill. 2d at 136. It is the defendant’s burden to establish that he had a legitimate expectation of privacy that was violated by the challenged search. 
Rawlings v. Kentucky
, 448 U.S. 98, 104, 65 L. Ed. 2d 633, 641, 100 S. Ct. 2556, 2561 (1980).

Defendant insists that he needed Belmonte’s testimony at the suppression hearing to establish the circumstances under which Belmonte allegedly consented to the search of the vehicle. Defendant argues that Belmonte’s testimony would have established that he intentionally lied to the officers so they would not search the trunk of the rental car and that defendant and Belmonte planned to disable the trunk mechanism to prevent discovery of the contents of the trunk. Finally, defendant alleges that Belmonte could have established defendant’s ownership of the boxes of ketamine. Defendant notes that while there was some testimony at the trial concerning Belmonte’s hiding of the trunk key and the disabling of the remote trunk release, this testimony occurred before the jury and at a time when defendant did not want to admit that it was his idea to take these precautions.

The State argues, and we agree, that it was not necessary for Belmonte to testify at the suppression hearing to establish defendant’s ability to claim a fourth amendment violation in this case. We first note that defendant disavowed in the circuit court any intent to challenge the search of the rental car. His counsel acknowledged that defendant lacked “standing” to do so, acknowledging that Belmonte had authority to consent to the search of the car. Accordingly, defendant has waived any argument concerning that search. 
People v. McClellan
, 232 Ill. App. 3d 990, 1004 (1992).

Regarding the search of the boxes of ketamine and their subsequent seizure, we note that in 
Simmons
 the Supreme Court held that where a defendant testifies at a hearing on a motion to suppress evidence on fourth amendment grounds, his testimony may not be admitted against him at trial on the issue of guilt, unless the defendant fails to object. 
Simmons
, 390 U.S. at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976. Thus, defendant here could have testified at the suppression hearing on the issue of his expectation of privacy in the contents of the boxes without fear that his testimony would later be used to convict him. Belmonte’s testimony was not essential to this issue. Defendant acknowledges that while it is true that he could have testified at the suppression hearing to establish a legitimate expectation of privacy in the boxes, he complains that his testimony could be used to impeach him if he testified at the trial and denied ownership of the ketamine. In 
Harris v. New York
, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), the Supreme Court addressed the question of whether the prosecution could impeach a defendant with statements given by him that were inadmissable under 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The defendant gave testimony that differed significantly from statements made by him to the police. He did not argue that the statements were coerced or involuntary. In rejecting the defendant’s argument that his statements could not be used to impeach his credibility, the Court stated:

“Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by 
Miranda
 cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.” 
Harris
, 401 U.S. at 225-26, 28 L. Ed. 2d at 4-5, 91 S. Ct. at 645-46.

Similarly, in 
People v. Sturgis
, 58 Ill. 2d 211, 216 (1974), this court held that, while the testimony of a defendant or documents voluntarily attested to by him in conjunction with a motion to suppress evidence may not be introduced by the prosecution in its case in chief, the testimony or documents may be used to impeach the defendant’s testimony at trial. Thus, defendant here is correct that had he testified at trial, any testimony he may have given at the suppression hearing that was inconsistent with his trial testimony could have been used to impeach his credibility. Nonetheless, this fact, however inconvenient defendant may find it, does not by itself provide a sufficient basis upon which to insist that the prosecution should have granted Belmonte use immunity at the suppression hearing so that he could have established defendant’s ability to claim a fourth amendment violation. Defendants are often faced with difficult decisions when weighing the pros and cons of testifying at trial. The necessity of making those decisions does not inevitably deprive defendants of any constitutional right. See, 
e.g.
, 
Williams v. Florida
, 399 U.S. 78, 83, 26 L. Ed. 2d 446, 450-51, 90 S. Ct. 1893, 1896-97 (1970) ( rule requiring notice to the State of an alibi defense and to disclose alibi witnesses does not violate a defendant’s privilege against self-incrimination). Likewise, a defendant’s testimony may be impeached with his prior convictions in appropriate cases. That a defendant may decide not to testify in a given case due to such considerations does not give rise to a constitutional violation. Defendant here could have, but chose not to, establish his right to contest the search of the boxes and seizure of the ketamine through his own testimony. Accordingly, contrary to his contention, Belmonte’s testimony was not the sole means by which this could have been accomplished.

Significantly, we further note that defendant could have requested that the circuit court reopen the hearing on the motion to suppress after Belmonte testified at the trial. The court’s ruling on that motion remained subject to change until final judgment. See 
People v. Brooks
, 187 Ill. 2d 91, 128 (1999). Defendant made no such request.

Because defendant had available to him other options through which to establish his right to claim a fourth amendment violation in this case, it is unnecessary for us to address the questions of whether the prosecution deprived defendant of due process by refusing to grant Belmonte use immunity at the suppression hearing or whether the prosecution could have been forced to grant Belmonte use immunity at that hearing. See 
People ex rel. Waller v. 1990 Ford Bronco
, 158 Ill. 2d 460, 464 (1994) (this court will not consider constitutional questions if the cause can be resolved on other grounds). We therefore reverse the judgment of the appellate court and remand to that court to address the remaining issues raised by defendant in his appeal.

Appellate court judgment reversed;

cause remanded.