NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170782-U

NO. 4-17-0782

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 26, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| EURON MATTHEWS, | ) | No. 17CF74 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles H.W. Burch, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court did not err in granting the State's motion to strike defendant's motion to suppress evidence on the basis that he lacked standing to claim fourth-amendment protections.

(2) The State presented sufficient evidence of qualifying felony offenses to support defendant's conviction for being an armed habitual criminal.

(3) The State presented sufficient evidence to prove defendant guilty of the charged offenses beyond a reasonable doubt.

(4) Defendant's claims of prosecutorial misconduct had no merit.

(5) Defendant failed to establish that his defense counsel provided ineffective assistance.

(6) Defendant failed to preserve for appellate review claims that the prosecutor made improper remarks during his opening statement and closing argument, and, forfeiture aside, defendant's claims were without merit.

¶ 2       Following a jury trial, defendant, Euron Matthews, was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)) and aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). The trial court sentenced him to consecutive prison terms of 22 years and 15 years, respectively. Defendant appeals *pro se*, arguing (1) the court erred in failing to conduct a hearing on his motion to suppress evidence, (2) the court erred by allowing the State to utilize his prior criminal charges to support the armed-habitual-criminal offense, (3) the State failed to prove him guilty of either charged offense beyond a reasonable doubt, (4) the State engaged in prosecutorial misconduct, (5) his defense counsel provided ineffective assistance, and (6) the prosecutor made improper comments during his opening statement and closing argument. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On January 25, 2017, the State brought charges against defendant based on allegations that he possessed and knowingly discharged a firearm at or into a vehicle that he knew or reasonably should have known was occupied. In charging defendant with being an armed habitual criminal, the State additionally alleged defendant had previously been convicted of (1) unlawful possession of a weapon by a felon in Will County case No. 13-CF-1670 and (2) unlawful manufacture or delivery of a controlled substance in Will County case No. 92-CF-3211.

¶ 5       Prior to trial, the State filed an amended information, charging defendant with the same offenses but altering the allegations with respect to his previous criminal history. Specifically, it alleged defendant had prior convictions for (1) unlawful use of a weapon by a felon in Will County case No. 13-CF-1670, (2) unlawful possession of a controlled substance with intent to deliver in Will County case No. 93-CF-3211, and (3) unlawful use of a weapon by a felon in

Will County case No. 94-CF-2443.

¶ 6         On June 15, 2017, defendant filed a motion to suppress evidence, specifically surveillance videos seized by the police following the execution of a search warrant at a residence located at 523 Lind Street in Quincy, Illinois. He alleged the evidence was illegally seized, in that the search warrant did "not name or describe the person or place to be searched with sufficient certainty," the affiant in the complaint for the search warrant "unknowingly used deliberate falsehoods and recklessly disregarded the truth," and no probable cause existed for the warrant. To his motion, defendant attached both a November 2016 complaint for a search warrant and a November 2016 search warrant for "[t]he premise and person of Felicia L. French, located at 523 Lind St[reet], Quincy, Adams County, Illinois," and both a December 2016 complaint for a search warrant and December 2016 search warrant for a "Swann Surveillance DVR" owned by French and in the custody of the Quincy Police Department.

¶ 7         On July 6, 2017, the trial court conducted a hearing on defendant's motion to suppress. At the outset of the hearing, the State made an oral motion to strike the motion to suppress based on defendant's lack of standing. It argued that the search warrant defendant challenged, as shown by the attachments to his motion, was for French's premises and person, as well as a surveillance system found at French's residence. The State maintained defendant had "no ties" to French's residence and no expectation of privacy in connection with either her residence or its surveillance system. In responding to the State's motion, defendant's counsel argued defendant had standing because he had been arrested and the evidence he challenged was being used against him. Upon inquiry by the court, counsel acknowledged that defendant had no possessory interest in French's 523 Lind Street residence, stating defendant "stay[ed] there sometimes," but did not

- 3 -

live there; own the property; or pay rent, utilities, or grocery bills associated with the property.

¶ 8          Ultimately, the trial court granted the State's motion to strike. In so holding, the court stated as follows:

"This is a search warrant that was for the premises and the person of Felicia French. [Defendant's] certainly not Felicia French, and he has no possessory interest in the residence or the premises located at 523 Lind Street ***. The video which he wishes to suppress was found as a result of a search warrant for those premises. Whether or not the search warrant was validly given or granted is beside the point to this defendant because he's got no possessory interest in the premises. So[,] he cannot object to the search or what was found, and he has what we call no standing to contest the search warrant because it was not for a premises which he had any interest in."

¶ 9          On July 17 and 18, 2017, defendant's jury trial was conducted. The State presented evidence that at approximately 3:30 a.m. on November 12, 2016, the police were called to the scene of a traffic crash at the intersection of "6th and Lind" Streets in Quincy, Illinois. Officer David Distin testified he responded to the scene and observed two damaged vehicles. One of the vehicles was parked "along the curb." The second, a Chevrolet Malibu (Malibu), was "overturned" and in the middle of the street. The State's evidence further showed the Malibu had damage consistent with being struck by bullets, including a single bullet hole in the front driver's side door, an indentation to the front driver's side fender, and an indentation "in the front driver's side wheel or the rim."

¶ 10          Chris Billingsley, a detective with the Quincy Police Department, testified he

investigated the November 2016 vehicle crash. In connection with that investigation, search warrants were executed at the 523 Lind Street residence. Approximately 80 hours of surveillance video recordings were obtained from five different surveillance cameras that were attached to the outside of the residence. The recordings included video from the date and time of the November 2016 crash. Billingsley testified those specific videos depicted an individual in the yard of 523 Lind Street with a gun in his hand. The same individual began shooting toward a vehicle as it drove past on Lind Street, and a muzzle flash could be seen coming from the gun. The video also showed the vehicle as it crashed into a parked car and overturned. Billingsley described the individual with the gun as an African American male with a shaved head, goatee, and a "[s]tockier build." The individual also appeared to be wearing a dark-colored jacket with "a white inlay or *** pinstripe" and some type of hands-free, Bluetooth device around his neck.

¶ 11 Billingsley further testified that he assisted the State's Attorney's office with combining the 80 hours of videos into shorter clips. He denied that anything was "altered or changed" in the videos when that occurred or that anything was "cut out *** where that suspect would have done something." Billingsley identified a compact disc (CD), which he testified contained the combined clips. The CD was admitted into evidence and shown to the jury over defendant's objection.

¶ 12 The State's evidence also showed that Billingsley did not initially know the identity of the shooter depicted in the surveillance videos. However, he showed the video and still photographs from the video to two other law enforcement officers, both of whom identified defendant as the shooter. Specifically, Mark Folkenroth, a patrol sergeant with the Quincy Police Department, testified he was familiar with defendant prior to November 2016, having "seen him

- 5 -

well over [100] times." In January 2017, Billingsley showed him the video of the shooting and Folkenroth recognized defendant as the shooter. Adam Gibson, a detective with the Quincy Police Department, testified he had contact with defendant "[n]umerous times" over his nearly 20-year career in law enforcement. Gibson stated he viewed still photographs and video from the surveillance footage. He also recognized defendant as the shooter.

¶ 13        After speaking with the other officers about the case, Billingsley began investigating defendant and obtained a photograph from a Facebook page under defendant's name, which had been posted on Facebook approximately 13 days after the shooting. Over defendant's objection, the Facebook photograph was shown to the jury. Over defendant's objection, the jury was also shown a photograph of defendant taken at the time of his arrest and still frames of the shooter taken from the surveillance footage. Billingsley testified the individual in the Facebook photograph had no hair; had a goatee; was wearing a darker-colored jacket with white "trim or ribbing"; and had a hands-free, Bluetooth device around his neck. When defendant was arrested, he had a similar hands-free, Bluetooth device in his possession.

¶ 14        Finally, over defendant's objection, the trial court allowed the State to present three exhibits containing certified copies of defendant's convictions for criminal offenses in three Will County cases. The first, People's exhibit No. 33, showed a conviction in case No. 92-CF-3211 for unlawful possession of a controlled substance with intent to deliver. The second, People's exhibit No. 34, showed a conviction in case No. 94-CF-2443 for unlawful use of a weapon by a felon. Finally, the third, People's exhibit No. 35, showed a conviction in case No. 13-CF-1670 for unlawful use of a weapon by a felon.

¶ 15        Defendant elected not to testify on his own behalf but presented the testimony of

two witnesses. Terance McKenzie testified he was driving the Malibu at the time of the shooting incident. While driving, he noticed "some people out in the street," including French. McKenzie stated he saw French run across the street and go into what appeared to be an alley. Next, he saw "flashes of gunfire." McKenzie also testified that he observed French with a gun in her hand. He denied seeing anyone else with a gun. He also denied knowing defendant.

¶ 16 On cross-examination, McKenzie acknowledged that he did not see French point a gun and shoot at his vehicle. He clarified that he did not know who shot at him, but he assumed it was French because he saw her with a gun. He further stated that he saw the "flashes" of gunfire coming from the area of 523 Lind Street, where he testified French "was staying." McKenzie identified a photograph of French that was also shown to the jury. Additionally, after being shown portions of the surveillance video, McKenzie agreed that "based on the video," it was not French who shot the gun at his vehicle.

¶ 17 Ebony Lee testified that on November 12, 2016, she lived in the neighborhood where the November 2016 incident occurred. Around 3 or 3:15 a.m., she was watching television and heard a gunshot. Lee testified she "wait[ed] for a minute" and then looked out of her bedroom window, which faced French's residence. She then saw "a female shooting" and observed "sparks from a gun in front of [French's] house." Lee identified the "female" she saw as French and asserted that French was shooting at a car as it drove past. She stated she went outside and saw a "car flipped over." Lee also denied knowing defendant.

¶ 18 On cross-examination, Lee agreed that it was dark outside at the time of the shooting and that she was "looking [from] across the street." She identified a photograph of French and agreed that French was a slender African American woman. The State also showed Lee

portions of the surveillance video. Lee agreed the video depicted a person, who was not French, holding and shooting a gun at a car.

¶ 19 The record reflects the jury found defendant guilty of both charged offenses. On July 31, 2017, defendant, with the aid of counsel, filed a motion for a new trial. He argued (1) the credibility and weight of the State's witnesses did not support the jury's guilty verdicts; (2) "the jury may have relied too heavily on the testimony of" police officers Billingsley, Folkenroth, and Gibson; (3) he should have been permitted to "bring up the fact that *** French" had also been charged in connection with the November 2016 incident but that charges against her were later dismissed; (4) the trial court erred in sustaining his objections to "pictures and tapes" submitted by the State; and (5) the State improperly referred to defendant "changing his appearance" during its closing argument. The same date, defendant, with the aid of counsel, filed a motion to set aside one of his guilty verdicts, arguing it was "repetitive and redundant" for him to be sentenced to two accompanying felony charges.

¶ 20 In August 2017, defendant filed a series of *pro se* posttrial motions. First, he filed a *pro se* motion for a new trial and dismissal, arguing (1) the State did not prove him guilty of being an armed habitual criminal because one of the predicate felonies it relied upon for that offense—unlawful possession of a controlled substance with intent to deliver in Will County case No. 92-CF-3211—was based on a dismissed charge, (2) he was prejudiced by the jury being informed of "all [of his] past [criminal] charges," (3) the State's presentation of certain video recordings and pictures denied him a fair trial, and (4) his due process rights were violated by the State's presentation of the surveillance video and the trial court's failure to hear his motion to suppress that video. To his motion, defendant attached a certified copy of docket sheets from Will

County case No. 92-CF-3211, indicating that although he was initially charged with unlawful possession of a controlled substance with intent to deliver, he pleaded guilty in that case to an amended charge of unlawful possession of a controlled substance, a Class 4 felony.

¶ 21 Defendant's second *pro se* filing was a "Motion to Amend Motion for a New Trial and Motion to Dismiss," wherein he reiterated his claim that the State's evidence was insufficient with respect to the armed-habitual-criminal charge. Finally, defendant also filed a *pro se* "Motion to Substitute Counsel." He alleged his trial counsel, Randall Prizy, did not "put up a defense for [him] at trial" and did not listen to his assertion that he "could have helped" during the trial. Defendant asserted he no longer trusted Prizy and wanted to continue in the proceedings *pro se*.

¶ 22 On August 30, 2017, the trial court conducted a hearing in the matter and addressed allegations in defendant's *pro se* filings that it found could liberally be construed as raising an ineffective-assistance-of-counsel claim. Stating that the allegations necessitated "a preliminary inquiry under *Krankel*" (*People v. Krankel*, 102 Ill.2d 181, 464 N.E.2d 1045 (1984)), the court questioned defendant regarding his allegations. Defendant asserted Prizy had not provided effective representation, complaining Prizy (1) did not "put *** to use" things he and defendant had discussed prior to trial, (2) was not "trial ready" because "he was going through" French's discovery at the beginning of the trial rather than defendant's, (3) objected to Billingsley's trial testimony on the basis that it differed from his preliminary hearing testimony but did not have copies of the preliminary hearing transcripts with him, (4) referenced ethical concerns regarding the questioning of witnesses but did not remove himself from defendant's case, and (5) failed to challenge the manner in which the surveillance video clips were "put *** together" for trial. Following further questioning of both defendant and Prizy, the court determined defendant's

claims lacked merit and related to matters of trial strategy.

¶ 23    During a further hearing on September 6, 2017, defendant reiterated that he no longer wanted Prizy to represent him and that he wished to proceed in the matter *pro se*. The trial court determined defendant's decision to represent himself was knowingly and voluntarily made and defendant signed a written waiver of counsel. Defendant also adopted the posttrial motions filed with Prizy's aid, asking the court to consider them in addition to his own *pro se* motions.

¶ 24    On September 14, 2017, the trial court conducted a hearing on defendant's posttrial motions and denied each of them. With respect to defendant's contention that he did not have a prior felony conviction for unlawful possession of a controlled substance with intent to deliver in Will County case No. 92-Cf-3211, the court determined as follows:

> "And the Court did receive the certified copy of conviction, which indicated that [defendant was], in fact, convicted of that charge ***.
>
> Even still, the State did—even assuming that that was not the charge to [*sic*] which you were convicted in that case, which I'm relying on the record that I have before me here, I believe that you were, and it was received for the purpose of the State proving up that—or one of the elements of the offense of armed habitual criminal, but even still, the State introduced certified record[s] of conviction for the offenses of unlawful use of [a] weapon by a felon [in two other cases], which those in and of themselves *** would have been sufficient for the State to prove up the elements of the offense and to support a finding of guilty beyond a reasonable doubt with respect to the charge of armed habitual criminal."

¶ 25    The matter then proceeded with sentencing and the trial court sentenced defendant

to consecutive prison terms of 22 years for being an armed habitual criminal and 15 years for aggravated discharge of a firearm. On September 20, 2017, defendant filed a motion to reconsider, arguing his sentences were excessive, which the court also denied.

¶ 26        This appeal followed. We note the Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. However, on July 15, 2019, OSAD filed a motion to withdraw as appellate counsel on the basis that defendant wanted to proceed *pro se*. The same month, this court allowed OSAD's motion.

¶ 27                                II. ANALYSIS

¶ 28                            A. Motion to Suppress

¶ 29        On appeal, defendant first challenges the trial court's ruling in connection with his motion to suppress the surveillance video, *i.e.*, the court's grant of the State's motion to strike defendant's motion to suppress on the basis that he lacked standing. Defendant argues the court erred by denying him a hearing on the motion, thereby depriving him of the right to a fair and impartial trial. He maintains that, had his motion been heard, he could have shown that the surveillance video was illegally seized in violation of the fourth amendment, rendering it inadmissible at his trial.

¶ 30        "The fourth[-]amendment protection against unreasonable government search and seizure extends only to individuals who have a reasonable expectation of privacy in the place searched or property seized." *People v. Johnson*, 114 Ill. 2d 170, 191, 499 N.E.2d 1355, 1364 (1986). In other words, "[f]ourth-amendment rights are personal, and the government violates a defendant's fourth-amendment rights by invading the defendant's own legitimate expectation of privacy." *People v. Ferris*, 2014 IL App (4th) 130657, ¶ 43, 9 N.E.3d 1126 (citing *United States*

*v. Payner*, 447 U.S. 727, 731 (1980)). "If all the government does is invade someone else's legitimate expectation of privacy, the defendant lacks standing to invoke the exclusionary rule of fourth-amendment jurisprudence." *Id.*

¶ 31          Factors relevant to determining whether a defendant possesses a reasonable expectation of privacy include:

> "(1) ownership of the property searched; (2) whether the defendant was legitimately present in the area searched; (3) whether defendant has a possessory interest in the area or property seized; (4) prior use of the area searched or property seized; (5) the ability to control or exclude others from the use of the property; and (6) whether the defendant himself had a subjective expectation of privacy in the property."
>
> *People v. Pitman*, 211 Ill. 2d 502, 520-21, 813 N.E.2d 93, 105 (2004).

"[W]hether a defendant has a reasonable expectation of privacy in the area searched or in the items seized must be answered in light of the totality of the circumstances of the particular case." *People v. Kidd*, 178 Ill. 2d 92, 136, 687 N.E.2d 945, 966 (1997).

¶ 32          Additionally, "[i]t is the defendant's burden to establish that he had a legitimate expectation of privacy that was violated by the challenged search." *People v. Rosenberg*, 213 Ill. 2d 69, 78, 820 N.E.2d 440, 446 (2004). "[W]hether a defendant has established a legitimate expectation of privacy sufficient to permit him to contest a search or seizure is a question of law and our review is *de novo*." *Id.* at 77.

¶ 33          Here, defendant moved to suppress the surveillance videos by challenging the search warrant for French's 523 Lind Street residence. However, before the trial court, defendant did not claim that he had a reasonable expectation of privacy with respect to either that residence

or the surveillance videos. Instead, when arguing the issue of standing before the court, defendant asserted only that he had standing based on his arrest and the use of the surveillance video as evidence against him. He also acknowledged that he did not live at the 523 Lind Street residence, he did not own the property, and he did not pay any bills associated with the residence. See *People v. Stachelek*, 145 Ill. App. 3d 391, 401, 495 N.E.2d 984, 990 (1986) (finding the defendant failed to show he had a reasonable expectation of privacy in another's apartment where he "failed to establish *** a right to exclude others from the apartment, a right to use the apartment in [the] absence [of the person who resided there], the possession of a key, the presence of his personal belongings, or anything which might create a legitimate expectation of privacy in the apartment").

¶ 34      On appeal, defendant asserts the trial court should have conducted an evidentiary hearing and allowed him the opportunity to establish the illegality of the search and seizure. However, as noted by the court, such issues are "beside the point" when the defendant cannot show an invasion of his own reasonable expectation of privacy in the place that was searched or the property that was seized. Again, defendant did not present any argument to the court that would advance a claim that he had a reasonable expectation of privacy in either the 523 Lind Street residence or its surveillance system. Following the State's motion to strike, he also did not ask for the opportunity to present such evidence. Given these circumstances, we find no error by the court in granting the State's motion and striking defendant's motion to suppress the surveillance videos.

¶ 35                   B. Evidence of Prior Convictions

¶ 36      On appeal, defendant next argues his due process rights were violated by the State's presentation of evidence, *i.e.*, People's exhibit No. 33, showing he had a prior conviction in case No. 92-CF-3211 for unlawful possession of a controlled substance with intent to deliver, a Class

1 felony. Defendant notes the fact of that prior conviction was used to support a finding that he was an armed habitual criminal. However, he maintains he was never convicted of unlawful possession of a controlled substance with intent to deliver and, instead, the charge "was nollied [*sic*] down to" possession of a controlled substance, a Class 4 felony offense. As a result, he asserts he was not proven guilty of being an armed habitual criminal beyond a reasonable doubt.

¶ 37        "A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted a total of [two] or more times of any combination of" certain enumerated offenses, including "unlawful use of a weapon by a felon" and "any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2016).

¶ 38        "In Illinois, the traditional method of proving a prior conviction is by the certified record of the prior conviction or an authenticated copy of the conviction, and proof of identity between the name on the record and the defendant on trial." *People v. White*, 311 Ill. App. 3d 374, 380, 724 N.E.2d 572, 577 (2000) (citing *People v. Davis*, 65 Ill.2d 157, 164, 357 N.E.2d 792, 795 (1976)). "If the name on the record is identical to the name of the defendant, a rebuttable presumption of identity arises." *Id.*

¶ 39        Here, the State charged defendant by amended information with being an armed habitual criminal, alleging he possessed a firearm after having been previously convicted of three qualifying felony offenses—unlawful use of a weapon by a felon in Will County case Nos. 13-CF-1670 and 94-CF-2443, and unlawful possession of a controlled substance with intent to deliver, a Class 1 felony, in Will County case No. 92-CF-3211. At trial, the State presented evidence that defendant possessed a firearm. It also presented evidence of defendant's prior convictions through

certified copies of conviction in the three Will County cases.

¶ 40     On appeal, defendant does not argue that he was not the named defendant in any of the Will County cases. Rather, he asserts that, in case No. 92-CF-3211, he was not convicted of unlawful possession of a controlled substance with intent to deliver. Defendant accurately points out that he objected to the admission of People's exhibit No. 33, containing the certified copy of conviction in that case. Following his trial, defendant also raised the issue in his *pro se* posttrial motion and submitted certified copies of docket sheets in Will County case No 92-CF-3211 that conflicted with the information presented by the State. However, even assuming defendant is correct, the erroneous admission of evidence showing he had a prior conviction for unlawful possession of a controlled substance with intent to deliver was, at most, harmless error.

¶ 41     "An evidentiary issue is harmless when no reasonable probability exists that the jury would have acquitted the defendant absent the error." *People v. Pelo*, 404 Ill. App. 3d 839, 865, 942 N.E.2d 463, 486 (2010). In connection with the armed-habitual-criminal offense, the State was required to submit evidence that defendant had previously been convicted of two or more qualifying felonies. As the trial court found, in this case, the State actually presented evidence that defendant had three qualifying prior felony convictions. Thus, there is no reasonable probability that, absent the admission of People's exhibit No. 33, containing the certified copy of conviction in case No. 92-CF-3211, defendant would have been acquitted of being an armed habitual criminal. Accordingly, defendant's claim on appeal is without merit.

¶ 42                              C. Sufficiency of the Evidence

¶ 43     Defendant next argues the State failed to prove him guilty beyond a reasonable doubt of either charged offense. He asserts the State's evidence was insufficient because it did not

include any physical evidence, such as deoxyribonucleic acid (DNA) evidence or weapons. Defendant also argues he presented "credible eyewitness testimony" that another individual was the perpetrator.

¶ 44 "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "When a defendant challenges the sufficiency of the evidence, a court of review must determine whether, [after] viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *Id.* It is the trier-of-fact's responsibility "to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *Id.* "It is not the role of the reviewing court to retry the defendant." *Id.*

¶ 45 Further, "[a] conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *Id.* ¶ 36. Rather, reversal is only warranted where "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.* ¶ 35.

¶ 46 As discussed, a person commits the offense of being an armed habitual criminal by possessing a firearm and having a criminal history that includes two or more convictions for certain qualifying offenses, including unlawful use of a weapon by a felon and "any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2016). Additionally, a person commits aggravated discharge of a firearm when he knowingly or intentionally "[d]ischarges a firearm in the direction of *** a vehicle he *** knows or reasonably should know to be occupied by a person." *Id.* § 24-

- 16 -

1.2(a)(2).

¶ 47      Here, the State's evidence was sufficient to establish each element of the charged offenses. At trial, the State presented three certified copies of conviction, one more than necessary, to establish defendant's prior qualifying felony convictions. It also presented surveillance footage of the shooting incident and the vehicle crash. The video depicted a male subject with a gun who shot several times toward a moving vehicle, which then overturned. Testimony also showed that two police officers, both of whom had previous familiarity with defendant, identified him as the shooter after observing either the surveillance video or still photographs from that video. Finally, the jury had the opportunity to observe defendant's appearance along with the surveillance video and other photographic evidence submitted by the State.

¶ 48      Although defendant presented the testimony of two witnesses who asserted they observed French either in possession of a gun or shooting a gun, both witnesses agreed that the State's surveillance footage did not depict French. We find the testimony from defendant's witnesses was not necessarily in conflict with the State's evidence; however, even to the extent that it was, it was within the province of the jury to resolve those conflicts. Ultimately, more than sufficient evidence was presented from which any rational trier of fact could have found defendant guilty of the charged offenses beyond a reasonable doubt. Defendant's contentions otherwise are without merit.

¶ 49                      D. Prosecutorial Misconduct

¶ 50      On appeal, defendant further raises allegations of prosecutorial misconduct. First, he argues that aggravated discharge of a firearm requires "a victim or victims for prosecution to commence." He also contends the prosecutor made contradictory statements by informing the trial

court that there was no victim in the case but then stating during his opening statement and closing argument "that victims were involved."

¶ 51    As discussed, to prove defendant guilty of aggravated discharge of a firearm, the State had to show defendant knowingly or intentionally discharged a firearm in the direction of a vehicle he knew or reasonably should have known was occupied. *Id.* § 24-1.2(a)(2). The State was not required to name or produce a victim of that offense to successfully prosecute defendant, nor did it do so when setting forth the allegations against defendant in the charging instrument.

¶ 52    The record reflects that prior to trial, the prosecutor did object to comments Prizy made regarding McKenzie as the "victim in th[e] case." The prosecutor asserted McKenzie was not the victim and that it did not need him "to proceed with th[e] case." He also pointed out that there was "no victim listed" for either charged offense. The prosecutor's comments were neither improper nor inaccurate. Additionally, although defendant argues the prosecutor made conflicting comments to the jury during his opening and closing argument, defendant does not cite to any portion of the appellate record to support his claim and our own review of the record reveals no such contradictory statements. Accordingly, we find no prosecutorial misconduct on this asserted basis.

¶ 53    Second, defendant argues the prosecutor misstated facts regarding the possibility that French also possessed a gun. He points to arguments the State made outside the presence of the jury when seeking to exclude testimony from defendant's witnesses at trial. Specifically, the record reflects the State argued that although it was possible French also had a gun at the time of the shooting, such a possibility was not relevant evidence in defendant's case. Defendant asserts it was improper for the prosecutor to make those statements but then argue to the jury that "no one

else" besides defendant "could have had or shot a gun."

¶ 54       Here, defendant mischaracterizes the prosecutor's arguments to the jury. Both before the trial court and when presenting its arguments to the jury, the prosecutor consistently asserted that French's possible possession of a gun at the time of the alleged offense was irrelevant to the ultimate issue of whether defendant was shown on the surveillance video discharging a firearm at a moving vehicle. The prosecutor's argument was not improper, and the record does not reflect any misstatement of the facts presented in the case.

¶ 55       Third, defendant alleges prosecutorial misconduct based on the State's action in combining the surveillance footage from different cameras. However, defendant offers no factual basis or legal authority upon which to find the State's action constituted misconduct. Moreover, the record reflects no impermissible action. At trial, Billingsley testified he worked with the State to combine 80 hours of surveillance video footage into shorter clips. He denied that "anything was altered or change[d]" when that occurred. Billingsley also denied that any portion of the footage was "cut out *** where the defendant would have done something." Under these facts, we find no error.

¶ 56                           E. Ineffective Assistance of Counsel

¶ 57       On appeal, defendant also argues that Prizy provided him with ineffective assistance of counsel. He contends Prizy was unprepared for trial because he did not bring preliminary hearing transcripts to the trial to assist in his cross-examination of Billingsley, he did not adequately cross examine any of the police officers who testified, and he failed to give "adequate opening and closing remarks."

¶ 58       A defendant's claim of ineffective assistance of counsel is evaluated under the two-

prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.*

¶ 59      Here, defendant has failed to establish that Prizy was ineffective. First, defendant claims that, had Prizy brought the preliminary hearing transcripts to defendant's trial, he would have been able to establish that Billingsley was untruthful and that he previously testified he "was unable to identify the person" in the surveillance video as defendant. However, the record reflects that, at trial, Billingsley testified on direct examination that he did not know the identity of the shooter after watching the surveillance video and he did not begin investigating defendant until after speaking with other police officers who viewed the surveillance footage. Given that Billingsley testified consistently at trial with what defendant claims his preliminary hearing testimony was, defendant cannot establish any prejudice from Prizy's failure to confront Billingsley with the preliminary hearing transcripts.

¶ 60      Second, defendant argues both that Prizy was ineffective in his cross-examination of the State's witnesses and that his opening statement and closing argument were inadequate. However, defendant has presented only bare assertions of error without any reasoned argument, factual support from the record, or citation to relevant legal authority supporting his claims. Under such circumstances, his claims have been forfeited and we decline to further consider them. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (providing that an appellant's brief must contain "the

contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited"); *People v. Sanchez*, 169 Ill. 2d 472, 499-500, 662 N.E.2d 1199, 1213 (1996) (finding the defendant's claims did not warrant further consideration where he failed "to support [his] allegations with any argument or authority").

¶ 61             F. The State's Opening Statement and Closing Argument

¶ 62            Finally, on appeal, defendant challenges comments the prosecutor made during his opening statement and closing argument. He argues the prosecutor (1) made remarks about his changing appearance that were inflammatory and an improper expression of the prosecutor's personal opinions, (2) improperly stated his opinion that defendant "was the shooter," (3) referenced circumstantial evidence and spoke "to the strength of the case" and defendant's guilt, and (4) improperly referenced his prior convictions.

¶ 63            Initially, we note that defendant has failed to preserve these issues for appellate review. See *People v. Belknap*, 2014 IL 117094, ¶ 47, 23 N.E.3d 325 (providing issues are forfeited on appeal where the defendant did not object during the underlying proceedings or include the issue in a posttrial motion). The record fails to reflect that defendant raised any objections to the challenged comments during either the prosecution's opening statement or its closing argument. Further, defendant included only his challenge to the prosecutor's comments on his appearance in a posttrial motion. Accordingly, the issues have been forfeited.

¶ 64            Notwithstanding that forfeiture, however, we find no merit to defendant's claims of error. "The purpose of an opening statement is to apprise the jury of what each party expects the evidence to prove." *People v. Kliner*, 185 Ill. 2d 81, 127, 705 N.E.2d 850, 874 (1998). "An

- 21 -

opening statement may include a discussion of the expected evidence and reasonable inferences from the evidence." *Id.* "Reversible error occurs only where the prosecutor's opening comments are attributable to deliberate misconduct of the prosecutor *and* result in substantial prejudice to the defendant." (Emphasis in original.) *Id.*

¶ 65    Additionally, prosecutors are "accorded wide latitude in the content of their closing arguments." *People v. Runge*, 234 Ill. 2d 68, 142, 917 N.E.2d 940, 982 (2009). "They may comment on the evidence and on any fair and reasonable inference the evidence may yield." *Id.* On review, we "consider the closing argument as a whole, rather than focusing on selected phrases or remarks, and will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *Id.*

¶ 66    In this case, a review of the record reflects both the prosecution's opening statement and closing argument fell within the bounds of appropriate commentary and argument. During his opening statement, the prosecutor properly commented on what the State's evidence was expected to show and, during his closing, commented on the evidence that had been presented at trial, including the fair and reasonable inferences to be drawn from that evidence.

¶ 67    As indicated, defendant claims it was error for the prosecutor to comment on changes in his appearance. We note that during his opening statement, the prosecutor described defendant's appearance in photographs that were submitted into evidence and commented only that the photographs showed "[n]ot how he looks now but [with] a shaved head [and] with a goatee." During his closing argument, the prosecutor argued defendant had grown his hair out and grew his beard long to confuse the jury.

¶ 68 Contrary to defendant's assertions, we do not find these remarks were improper. Rather, the prosecutor commented on what was legitimately shown by the evidence presented and what the jury could observe at trial—that defendant's appearance changed from the time of the November 2016 incident and the date of his arrest—and a reasonable inference to be drawn from that evidence—that defendant was attempting to prevent his identification. See *People v. Clark*, 335 Ill. App. 3d 758, 767, 781 N.E.2d 1126, 1133 (2002) (holding the State's comment that defendant had changed is appearance "was legitimate and based on the evidence," and "relevant, in that it arguably indicated a consciousness of guilt on defendant's part"). Additionally, we note the challenged comments were only a small part of the State's argument to the jury in a case where substantial evidence of defendant's guilt was presented. Thus, assuming the remarks were improper, they were not substantially prejudicial. See *People v. Byron*, 164 Ill.2d 279, 296-97, 647 N.E.2d 946, 955 (1995) (finding comments by the prosecutor during closing argument that the defendant changed his appearance for trial did not substantially prejudice the defendant and reversal was unwarranted). Accordingly, forfeiture aside, we would find no reversible error from the prosecutor's comments during either his opening statement or his closing argument.

¶ 69 III. CONCLUSION

¶ 70 For the reasons stated, we affirm the trial court's judgment.

¶ 71 Affirmed.